1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11  BYRON CHAPMAN,
                                     NO. CIV. S-04-1339 LKK CMK
12
            Plaintiff,
13                                          O R D E R
          v.
14
    PIER 1 IMPORTS, et al.,
15
            Defendants.
16  _____/

17       Plaintiff, Byron Chapman, a disabled and wheelchair bound man,

18  sues defendant, Pier 1 Imports store in Vacaville, California,

19  pursuant to the American with Disabilities Act of 1990, 42 U.S.C.

20  §§ 12101 et seq. ("ADA").  He also asserts several state law

21  claims.[1]  The matter is before the court on the parties' cross-

22  motions for summary judgment.

23  ////

24  ////

25  _____

26       [1]  Plaintiff also brings claims pursuant to The Unruh Act
    (Cal. Civ. Code §§ 51 et seq.), and The Disabled Persons Act
    (Cal. Civ. Code §§ 54 et seq.). (Other claims raised in the
    complaint have since been abandoned by plaintiff).

# I.

## FACTS[2]

Plaintiff Byron Chapman ("plaintiff") uses a wheelchair for mobility due to multiple conditions caused by a spinal cord injury. Pl.'s SUF 1.  Plaintiff cannot walk unassisted for any distance, and needs a wheelchair to travel in public.  Pl.'s SUF 2.  On May 22, 2004, plaintiff visited the Pier 1 located at 2070 Harbinson Blvd. in Vacaville, CA to purchase a patio umbrella.  He visited the store again on June 1, 2004.  Pl.'s SUF 5.  During these visits, plaintiff contends that he has encountered a number of barriers that made it difficult for him to fully access the facility.  Pl.'s SUF 11.  Because of these barriers, plaintiff maintains that he is not able to patronize the Pier 1 as he would like to.  Pl.'s SUF 12.

On July 6, 2004, plaintiff filed a complaint, which alleged that he encountered "architectural barriers that denied him full and equal access."  Compl. at 4.  Plaintiff attached a list of barriers to his complaint, which he claimed were the barriers "known by [him]."  Ex. A to Compl.  This list of barriers is referred to as the "accessibility survey."

The accessibility survey identified fifteen "barriers." However, since the complaint was filed, plaintiff and defendant jointly stipulated to dismissing all claims relating to the exterior of the building.  The remaining barriers identified in the

---

[2]   Facts are undisputed unless otherwise noted.

2

complaint are:

    (1) Improper posting of the ISA signage on the entrance doors to the store.  (Violations identified as 4a & b in the accessibility survey.)

    (2) Improper or missing signs designating permanent rooms and spaces.  (6a in the accessibility survey.)

    (3) Improper sign on emergency exit door.  (6b in the accessibility survey.)

    (4) Routes of travel to restroom and emergency exits are blocked.  (6c & 7a in the accessibility survey.)

    (5) No sign for accessible restroom.  (8a in the accessibility survey.)

    (6) Within the men's restroom, the seat cover dispenser is located over the back grab bar in the accessible stall.  (9a in the accessibility survey.)

    (7) Within the men's restroom, the back grab bar is improperly located in the accessible stall.  (10a in the accessibility survey.)

    (8) Within the men's restroom, the toilet tissue dispenser is improperly located in the accessible stall. (11a & b in the accessibility survey.)

    (9) There is insufficient floor space around the water closet within the men's restroom.  (12a in the accessibility survey.)

    (10) A waste receptacle is located in an area that is required to be clear floor space.  (13a in the accessibility survey.)

    (11) The P-trap leading edge is noncompliant with ADAAG regulations.[3]  (13b in the accessibility survey.)

    (12) The accessible checkout aisles lack the required ISA signage.  (14a in the accessibility survey.)

    (13) Check stands lack required California Building Code signage.  (14a in the accessibility survey.)

////

---

    [3]  A p-trap is part of the plumbing that is below a sink.

1    After the complaint was filed, plaintiff's expert, Joe Card,

2  inspected the store on May 13, 2005 and prepared a report on August

3  25, 2005.  This report identified thirty (30) violations.  Some of

4  these violations pertained to violations raised in the complaint

5  and other violations were new.  Additionally, some of the barriers

6  listed in the accessibility survey are not addressed at all in

7  Card's report.

8    On November 14, 2005, defendant filed a motion for summary

9  judgment, or in the alternative, summary adjudication, on all or

10  some of the claims raised in the complaint.  Plaintiff filed an

11  opposition and cross-motion for summary judgment in which plaintiff

12  listed a new and separate list of eleven barriers that were

13  identified by Joe Card in his August report. <u>See</u> Pl.'s Opp'n. and

14  Cross-Mot. for Sum. J. at 2:22-321.[4]  Several of these newly-

15  identified barriers related to barriers identified in the

16  complaint, whereas the other barriers were unrelated to violations

17  raised in the complaint.[5]

18  _____

19      [4]  The new violations identified by Card and listed in the
Oppo/Cross Mot. are: (1) the ISA signage at the entrance door is
improper; (2) entrance door requires 9 pounds of pressure to

20  operate; (3) the checkout counters lack ISA signage; (4) the height
of the service counter is improper; (5) the store's aisles do not

21  provide the proper width clearance; (6) the drinking fountain
stream is too low; (7) the signage for the men's restroom is

22  improper; (8) the men's restroom door improperly requires 12 pounds
of pressure to operate; (9) in the men's restroom, the mirror is

23  at an improper height; (10) in the men's restroom, the water closet
is improperly centered from the sidewalls; (11) clear floor space

24  is not provided for the paper towel dispenser because a trash can
is located in the area.

25

26      [5]  Although plaintiff attached the August Card report to his
cross-motion for summary judgment, only eleven barriers were

1

## II.

2

### STANDARDS

3      Summary judgment is appropriate when it is demonstrated that

4   there exists no genuine issue as to any material fact, and that the

5   moving party is entitled to judgment as a matter of law.  Fed. R.

6   Civ. P. 56(c); <u>See also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

7   157 (1970); <u>Sicor Limited v. Cetus Corp</u>., 51 F.3d 848, 853 (9th

8   Cir. 1995).

9      Under summary judgment practice, the moving party

10          [A]lways bears the initial responsibility of informing
            the district court of the basis for its motion, and
11          identifying   those   portions   of   "the   pleadings,
            depositions, answers to interrogatories, and admissions
12          on file, together with the affidavits, if any," which it
            believes demonstrate the absence of a genuine issue of
13          material fact.

14   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the

15   nonmoving party will bear the burden of proof at trial on a

16   dispositive issue, a summary judgment motion may properly be made

17   in reliance solely on the 'pleadings, depositions, answers to

18   interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary

19   judgment should be entered, after adequate time for discovery and

20   upon motion, against a party who fails to make a showing sufficient

21   to establish the existence of an element essential to that party's

22   case, and on which that party will bear the burden of proof at

23   _____

24   identified in the actual brief.  Plaintiff fails to clarify if he
     is moving on all thirty violations raised in the Card report, or
25   only the eleven identified in the cross-motion brief.  The court
     concludes that since plaintiff identified only eleven barriers in
26   his actual brief, he is moving only as to those eleven barriers.

1 trial.  See id. at 322.  "[A] complete failure of proof concerning

2 an essential element of the nonmoving party's case necessarily

3 renders all other facts immaterial."  Id.  In such a circumstance,

4 summary judgment should be granted, "so long as whatever is before

5 the district court demonstrates that the standard for entry of

6 summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

7 at 323.

8     If the moving party meets its initial responsibility, the

9 burden then shifts to the opposing party to establish that a

10 genuine issue as to any material fact actually does exist.

11 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

12 586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

13 391 U.S. 253, 288-89 (1968); Sicor Limited, 51 F.3d at 853.

14     In attempting to establish the existence of this factual

15 dispute, the opposing party may not rely upon the denials of its

16 pleadings, but is required to tender evidence of specific facts in

17 the form of affidavits, and/or admissible discovery material, in

18 support of its contention that the dispute exists.  Fed. R. Civ.

19 P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l

20 Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

21 1998).  The opposing party must demonstrate that the fact in

22 contention is material, i.e., a fact that might affect the outcome

23 of the suit under the governing law, Anderson v. Liberty Lobby,

24 Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of

25 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

26 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

1  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,

2  i.e., the evidence is such that a reasonable jury could return a

3  verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see

4  also Cline v. Industrial Maintenance Engineering & Contracting Co.,

5  200 F.3d 1223, 1228 (9th Cir. 1999).

6       In the endeavor to establish the existence of a factual

7  dispute, the opposing party need not establish a material issue of

8  fact conclusively in its favor.  It is sufficient that "the claimed

9  factual dispute be shown to require a jury or judge to , 04-

10 1993resolve the parties' differing versions of the truth at trial."

11 First Nat'l Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809

12 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

13 the pleadings and to assess the proof in order to see whether there

14 is a genuine need for trial.'"   Matsushita, 475 U.S. at 587

15 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

16 amendments); see also International Union of Bricklayers & Allied

17 Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401,

18 1405 (9th Cir. 1985).

19      In resolving the summary judgment motion, the court examines

20 the pleadings, depositions, answers to interrogatories, and

21 admissions on file, together with the affidavits, if any.  Rule

22 56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093

23 (9th Cir. 1999).  The evidence of the opposing party is to be

24 believed, see Anderson, 477 U.S. at 255, and all reasonable

25 inferences that may be drawn from the facts placed before the court

26 must be drawn in favor of the opposing party, see Matsushita, 475

1    U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654,

2    655 (1962) (<u>per</u> <u>curium</u>)).   Nevertheless, inferences are not drawn

3    out of the air, and it is the opposing party's obligation to

4    produce a factual predicate from which the inference may be drawn.

5    <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45

6    (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

7         Finally, to demonstrate a genuine issue, the opposing party

8    "must do more than simply show that there is some metaphysical

9    doubt as to the material facts. . . . Where the record taken as a

10   whole could not lead a rational trier of fact to find for the

11   nonmoving party, there is no 'genuine issue for trial.'"

12   <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

13                              **III.**

14                        **PRELIMINARY QUESTIONS**

15        Pending before the court are cross-motions for partial summary

16   judgment filed by both parties.   Defendant moves for summary

17   judgment on the grounds that plaintiff lacks standing and that

18   plaintiff's claims are either not barriers as a matter of law, or

19   have been remedied.   <u>See</u> Def.'s Mot. for Sum. J. at 2.[6]   Plaintiff

20   cross-moves on the grounds that there remain barriers which were

21   identified by plaintiff's expert, and which relate to plaintiff's

22   ////

23   ──────────────

24        [6] Although defendant appears to move for summary judgment as
     to all claims raised in the complaint, defendant and plaintiff only
     brief the ADA and Unruh claims.   The court will only adjudicate
25   those claims which are clearly being moved on.   For that reason,
     the court declines to adjudicate the related state law claims which
26   have not been briefed by either party.

1   disability.  Pl.'s Opp'n and Cross-Mot. at 5.[7]  Plaintiff moves for

2   summary judgment on his ADA and Unruh Act claims.[8]

3       Before addressing the merits of the case, however, I address

4   several threshold issues.

5 **A.  WHICH CLAIMS ARE ACTIONABLE?**

6       Before resolving the motions, the court must first

7   determine which architectural barriers are properly before the

8   court.  Plaintiff asserts claims based upon the barriers alleged

9   in his complaint and on those identified in the August Card report.

10   Defendant argues that plaintiff only has standing to bring suit

11   with respect to the barriers he personally encountered and that

12   plaintiff lacks standing as to the violations discovered by Card.

13       The court recently had the opportunity to address this exact

14   issue in two prior cases, Eiden v. Home Depot, No. CIV. S-04-977

15   LKK/CMK (E.D. Cal. 2004)and Wilson v. Pier 1 Imports, 413 F.Supp.2d

16   1130 (E.D. Cal. 2006).  As in Wilson and Eiden, defendant in the

17   case-at-bar relies on a standard offered in White/Martinez that

18   this court believes is "unduly restrictive," and thus, the court

19   cannot adhere to it.  No purpose would be served by repeating the

20   analysis articulated in Wilson and Eiden.  With respect to the Card

21

22      [7]  Plaintiff has filed one brief which contains his motion for
23 summary judgment as well as his opposition brief to defendant's
motion for summary judgment.

24      [8]  As explained in note 6, the court will only adjudicate
those claims that are briefed by the parties.  Plaintiff is silent
25 as to his claim under the Disabled Persons Act.  The court
concludes, therefore, that plaintiff is only moving on his Unruh
26 and ADA claims.

1   report and the accessibility survey, nothing in the ADA requires

2   plaintiff to have personally encountered all barriers in order to

3   seek an injunction to remove those barriers.  See Eiden v. Home

4   Depot, No. CIV. S-04-977 LKK/CMK (E.D. Cal. 2004); Wilson v. Pier

5   1 Imports, 413 F.Supp.2d 1130 (E.D. Cal. 2006).

6        Nor is plaintiff's suit limited to the barriers that he

7   alleged in his complaint.  As this court previously explained,

8   "[o]nce plaintiff either encountered discrimination or learned of

9   the alleged violations through expert findings or personal

10  observation, he had 'actual notice' that defendant did not intend

11  to comply with the ADA."  See Wilson, 413 F.Supp.2d at 1134.  As

12  the court further noted,

13          "the injury-in-fact requirement of Article III standing
            is easily satisfied by liberally construing it in this
14          context.  All that is required is to recognize that the
            injury suffered relative to later-discovered barriers is
15          the threat of being subjected to discrimination suffered
            by virtue of the existence of barriers, whether or not
16          initially encountered."

17  Id.

18       Having explained that, as a general matter, plaintiff is not

19  bound by the specific ADA claims asserted in his complaint under

20  Constitutional standing principles, the court addresses defendant's

21  argument that plaintiff should not be permitted to incorporate new

22  factual allegations that are not contained within the complaint.

23  Def.'s Reply at 9:16-17.  Indeed, although plaintiff's complaint

24  need only state a "short and plain statement of the claim showing

25  that the pleader is entitled to relief," see Fed. R. Civ. P.

26  8(a)(2), plaintiff must still provide "fair notice" for specific

1  claims not asserted in his complaint.

2       The court finds that, under the circumstances, the barriers

3  alleged in the Card report are actionable.  The Card report was

4  served on defendant on August 26, 2005, two months before the close

5  of discovery.  Defendant became aware of the Card report at that

6  time.

7       As with the issue of standing, the court recently addressed

8  the issue of notice in _Eiden_.  Rather than repeat the analysis

9  here, the court adopts by reference the notice analysis as set

10 forth in _Eiden_.  Where, as here, plaintiff discovered new alleged

11 violations during the discovery period that were not pled in the

12 complaint, but disclosed to defendant in sufficient time to permit

13 defendant to address them in discovery and by way of law and

14 motion, the court concludes plaintiff is not precluded from raising

15 these allegations on a motion for summary judgment or at trial.[9]

16      For the reasons explained above, the court holds that the

17 claims asserted in the accessibility survey and Card report are

18 actionable and shall be adjudicated by this court.  The court now

19 turns to Unruh Civil Rights Act and ADA violations alleged by

20 plaintiff.

21 **B.   THE UNRUH ACT**

22      Plaintiff seeks summary judgment pursuant to the Unruh Act

23 because his claim is predicated upon defendant's violation of the

24

25 _____

26      [9]  That is not to say that amendment of the complaint is not
the better practice – clearly it is.

1  ADA.  Pl.'s Cross-Mot. and Opp'n at 6.[10]  He asserts that "a

2  violation of his rights under the ADA is a *per se* violation of his

3  rights under the Unruh Act."  <u>Id</u>. (italics in original).  Defendant

4  maintains that the Unruh claim should be dismissed because it is

5  based solely on the alleged violations of the ADA and plaintiff

6  cannot establish any ADAAG violations. Def.'s Reply at 15.

7  Alternatively, defendant argues that the court should decline to

8  exercise jurisdiction over the Unruh claim.  Def.'s Reply at 16.

9      Because there remain disputed issues as to a number of the ADA

10  claims, there remains a live controversy as to the federal claims.

11  Thus, the court may still exercise supplemental jurisdiction over

12  plaintiff's state law claims.  I now turn to the provisions of the

13  Unruh Act.

14      The Unruh Civil Rights Act, codified in California Civil Code

15  § 51, provides that "[a]ll persons . . . are entitled to full and

16  equal  accommodations,  advantages,  facilities,  privileges,  or

17  services in all business establishments of every kind whatsoever."

18  Cal. Civ. Code § 51(b).  The purpose of the Unruh Act "is to compel

19  a recognition of the equality of citizens in the right to the

20  peculiar service offered" by the entities covered by the acts.

21  <u>Marina Point, Ltd. v. Wolfson</u>, 30 Cal.3d 721, 737 (1982)(quotation

22  omitted);  <u>see  also</u>  <u>Strother v. Southern California Permanente</u>

23  <u>Medical Group</u>, 79 F.3d 859 (9th Cir. 1996).

24  —————————————————

25      [10]  Plaintiff pleads in his complaint that his Unruh Act claim
    is predicated upon the ADA claim.  <u>See</u> ¶ 63 of Compl. ("The Unruh
26  Act also specifically incorporates (by reference) an individual's
    rights under the ADA.").

1    Prior to 1992, to prove a claim under the Unruh Act  plaintiff
2  was required to demonstrate that the facility was in violation of
3  Title 24 and that the discrimination he experienced was
4  intentional.  <u>See</u> <u>Harris v. Capital Growth Investors XIV</u>, 52 Cal.3d
5  1142, 1175 (1991)("[W]e hold that a plaintiff seeking to establish
6  a case under the Unruh Act must plead and prove intentional
7  discrimination in public accommodations in violation of the terms
8  of the Act"); <u>Lentini v. California Center for the Arts</u>, 970 F.3d
9  837, 847 (9th Cir. 2004).

10    To effectuate its long-stated policy of ridding the state of
11  discrimination, <u>see</u> <u>Warfield v. Peninsula Golf & Country Club</u>, 10
12  Cal.4th 594 (1995), the California legislature amended the Unruh
13  Act in 1992 to broaden the scope of its protection.  As amended,
14  § 51 provides that "[a] violation of the right of any individual
15  under the Americans with Disabilities Act of 1990 . . . shall also
16  constitute a violation of this section."  Cal. Civ. Code § 51(f).

17    It is pursuant to this subsection that plaintiff seeks to
18  recover.  <u>See</u> Pl.'s Compl. at 11.  Plaintiff maintains that the
19  violations complained of in his complaint and in the Card report
20  violated both the ADA and California law.  Indeed, both Card's
21  report and the accessibility survey note how each alleged barrier
22  violates the ADAAG and the CBC.

23    While, as a general matter, a plaintiff may rely on both the
24  ADAAG and CBC when pursuing an Unruh claim, the question is whether
25  he may do so where his Unruh claim is based solely on purported
26  violations of the ADA.  This issue raises two different questions:

1  Is plaintiff's Unruh claim proceeding only on the amendment

2  allowing recovery under state law for violation of the federal

3  statute?  If so, may plaintiff rely on the CBC in doing so?

4      As in <u>Eiden</u>, the court concludes that nowhere in plaintiff's

5  filings is there any suggestion of intentional discrimination.

6  Accordingly, the only legal theory available to plaintiff on his

7  Unruh claim is that architectural barriers at Pier 1 violate the

8  ADA.  <u>See</u> <u>Eiden</u>, No. CIV. S-04-977 LKK/CMK (E.D. Cal. 2006).  It

9  does not follow, however, that where relief is barred under the

10  ADA, relief is also barred under the Unruh Act.

11      Again, as explained previously in <u>Eiden</u>, the state

12  legislature, unlike Congress, has provided that an individual may

13  recover damages for a violation of the Unruh Act.  As in <u>Eiden</u>, I

14  conclude that plaintiff may recover under the Unruh Act, even

15  absent relief under the ADA.  The second question seems equally

16  straight-forward.  <u>See</u> <u>id</u>.

17  **C.   The CBC and the ADA**

18      At various places throughout plaintiff's brief and the Card

19  report, reliance is placed on the California Building Code to

20  assert violations of the ADA.  As the parties note, it is clear

21  that the federal statute does not preempt state law where the state

22  law provides "greater or equal protection."  42 U.S.C. § 12201(b).

23  The question here, however, is not whether state law is more

24  protective, but whether a violation of state regulations

25  establishes a barrier for purposes of the ADA.

26  ////

1   This exact issue was also addressed in <u>Eiden</u>.  Rather than

2   repeat the analysis, the court adopts by reference the analysis

3   articulated in <u>Eiden</u> with respect to the ADAAG and the CBC.  As in

4   <u>Eiden</u>, I conclude that compliance with the ADAAG, and not another

5   standard, constitutes compliance with the ADA requirements for new

6   construction.[11]

7   For all of the reasons set forth above, the court concludes

8   that the ADAAG constitutes the exclusive standards under Title III

9   of the ADA.  I now turn to plaintiff's ADA claims, since his Unruh

10  Act claims turn on ADA liability.

11  **IV.**

12  **THE MERITS**

13  Title III of the ADA prohibits discrimination against

14  individuals on the basis of disabilities in the full and equal

15  enjoyment of the goods, services, facilities, privileges,

16  advantages or accommodations of any place of public accommodation.

17  <u>See</u> 42 U.S.C. § 12182(a).  Title III defines "discrimination" as,

18  among other things, a failure to remove "barriers . . . where such

19  removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv);

20  <u>Pickern v. Holiday Quality Foods Inc.</u>, 293 F.3d 1133, 1135 (9th

21

22  [11]   Finally, the court notes that because Congress directed
        that the Department of Justice, in conjunction with the
23  Architectural and Transportation Barriers Compliance Board ("Access
    Board"), issue the ADAAG, and that these standards constitute
24  binding regulation, the court is not authorized to evaluate Title
    III disability discrimination claims under any other standard, and
25  to determine what engineering or architectural modifications are
    necessary, or whether such modifications would be feasible and
26  desirable.

1  Cir. 2002).  Plaintiff avers that defendant discriminated against

2  him when it failed to remove certain architectural barriers at the

3  Pier 1 location at issue in this litigation.

4       Under Title III of the ADA, a plaintiff must prove that (1)

5  he has a disability, (2) defendant's facility is a place of public

6  accommodation, (3) and plaintiff was denied full and equal

7  treatment because of his disability.  To succeed on an ADA claim

8  of discrimination on account of an architectural barrier, the

9  plaintiff must also prove that (1) the existing facility at the

10  defendant's place of business presents an architectural barrier

11  prohibited under the ADA, and (2) the removal of the barrier is

12  readily achievable.  See 42 U.S.C. § 12182(b)(2)(A)(iv); see also

13  Pascuiti v. New York Yankees, No. 98 CIV. 8186 (SAS), 1999 WL

14  1102748, at * 5 (S.D.N.Y. Dec.6, 1999) (plaintiff bears the initial

15  burden of proving that barrier removal is readily achievable).  If

16  plaintiff satisfies his burdens, the burden shifts to the defendant

17  to show that removal of the barriers is not readily achievable.

18       It is undisputed that Pier 1 Imports is a place of public

19  accommodation and that plaintiff is disabled.  Plaintiff thus meets

20  the first two elements of an ADA prima facie case.  What remains

21  in dispute is whether plaintiff was discriminated against on

22  account of his disability based on an architectural barrier.

23  **A.    ARCHITECTURAL BARRIERS AND STANDARDS GOVERNING NEW**
   **CONSTRUCTION**

24

25       Plaintiff contends that defendant violated the ADA by failing

26  to abide by the Department of Justice's Regulations implementing

16

1   the ADA's public accommodation provisions and the corresponding ADA

2   Accessibility Guidelines ("ADAAG").  These regulations are divided

3   into three categories.  The first category requires that newly-

4   constructed public accommodations must comply with specific

5   accessibility requirements set forth in the ADAAG.  See 28 C.F.R.

6   Pt. 36.401; 28 C.F.R. Pt. 36.406.  The second category concerns the

7   accessibility requirements imposed on public accommodations altered

8   after January 26, 1992.  See id.  The third category requires the

9   removal of architectural barriers in preexisting public

10  accommodations (those designed and constructed for occupancy before

11  January 26, 1993).  See 28 C.F.R. Pt. 36.304.  Under the ADA's

12  continuing barrier removal obligation, it is discriminatory for

13  owners, operators, lessors or lessees to fail to remove

14  architectural barriers that deny disabled persons the goods and

15  services offered to the general public.  See Hubbard v. Twin Oaks

16  Health and Rehabilitation Center, 408 F.Supp.2d 923, 930 (E.D. Cal.

17  2004)(citing Parr v. L & L Drive-Inn Restaurant, 96 F.Supp.2d 1065,

18  1086 (D. Haw. 2000)).

19       For purposes of the ADA, the Pier 1 facility at issue

20  falls within the first category described, as the building was

21  constructed in 2002.  The ADA requires that newly-constructed

22  facilities be "readily accessible and usable by individuals with

23  disabilities."  See 42 U.S.C. § 12183(a)(1).  This command to build

24  accessible facilities is excepted only if meeting the requirements

25  ////

26  ////

1  of the Act would be "structurally impracticable."   Id.[12];  See

2  also Long v. Coast Resorts, Inc., 267 F.3d 918, 923 (9th Cir. 2001)

3  ("We need not decide whether the ADA forecloses the possibility

4  that a court might exercise its equitable discretion in fashioning

5  relief for violations of § 1283(a) . . . because there is no room

6  for discretion even if it exists")(citation omitted)).

7       Below, the court addresses the ADA violations alleged in the

8  complaint, which plaintiff moves on in his summary judgment motion,

9  as well as the violations identified by Joe Card in the expert

10 report.

11 **B.   BARRIERS RAISED IN COMPLAINT**

12      Defendant moves as to all the barriers alleged in plaintiff's

13 complaint.   The court quickly disposes of ten of the thirteen

14 barriers raised in the complaint.[13]

15      With respect to these ten barriers, defendant's motion for

16 summary judgment must be granted.   First, plaintiff fails to supply

17 _____

18      [12]  See also 28 C.F.R. Pt. 36.401(c)(structural
   impracticability means "those rare circumstances where the unique
19 characteristics of the terrain prevent the incorporation of
   accessibility features.").

20      [13]  The following barriers all raise similar issues and so the
   court disposes of these barriers first and as a group:  Exit door
21 signage missing (barrier 6b in the accessibility survey); no
   directional signage for accessible restrooms (barrier 8a); within
22 the men's restroom, the seat cover dispenser is improperly located
   (barrier 9a); within the men's restroom, the back grab bar is
23 improperly located in the accessible stall (barrier 10a); within
   the men's restroom, the toilet tissue dispenser is improperly
24 located (11a & b); there is inadequate clear floor space in the
   men's restroom (barrier 12a); within the men's restroom, the P-trap
25 leading edge is noncompliant (barrier 13b); accessible checkout
   aisles lack ISA signage (barrier 14a); and check stands lack CBC
26 signage (barrier 15a).

1  any legal basis for several of the alleged barriers.[14]  Often, the

2  ADAAG section cited to by plaintiff is not applicable (because it

3  does not address that specific barrier) or plaintiff does not

4  explain how the alleged barrier actually violates the ADAAG. The

5  court will not search for which section of the ADAAG, if any, is

6  applicable to the alleged barriers raised by plaintiff.

7         Second, even when plaintiff has cited to the proper ADAAG

8  standard, defendant has established that there are no violations

9  with respect to these alleged barriers.  Specifically, defendant

10 explains that plaintiff's own expert, Joe Card, did not address any

11 of these alleged barriers in his August report.  This is

12 significant for two reasons.  One, Card testified that he was aware

13 of no other additional barriers that were not listed in his report.

14 Therefore, he did not identify any of these barriers (which were

15 raised in the complaint) as "violations".  Two, Card inspected the

16 store over a year after the accessibility survey was completed and

17 during that year, the store may have remedied the violation.  In

18 short, defendant put forth facts that these ten alleged violations

19 do not, in fact, exist.  Plaintiff, in turn, has failed to tender

20 any evidence to suggest that a factual dispute remains as to these

21 alleged violations.

22  _____

23      [14]  Specifically, plaintiff fails to cite a relevant ADAAG
    standard with respect to the following alleged violations:  Exit
24  door signage missing (barrier 6b in the accessibility survey); no
    directional signage for accessible restrooms (barrier 8a); within
25  the men's restroom, the seat cover dispenser is located over the
    back grab bar (barrier 9a); the back grab bar is improperly located
26  (10a); accessible checkout aisles lack ISA signage (barrier 14a);
    and check stands lack CBC signage (barrier 15a).

1    Finally, plaintiff fails to mention, much less discuss, any

2    of these ten alleged violations in his opposition, cross-motion and

3    reply brief.

4    Given plaintiff's lack of diligence in assisting the court

5    with the adjudication of each of these ten alleged barrier, it is

6    worth noting that "'[j]udges are not like pigs, hunting for

7    truffles buried in' the record." <u>Albrechtsen v. Board of Regents</u>

8    <u>of University of Wisconsin System</u>, 309 F.3d 433, 436 (7th Cir.

9    2002)(quoting <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir.

10   1991)).  For this reason, defendant's motion with respect to all

11   ten of these barriers is GRANTED.

12   The court next addresses barriers that require more

13   discussion.

14   1.   **<u>Improper Posting of the ISA Signage on the Entrance</u>**
     **<u>Doors to the Store</u>**[15]

15

16   Plaintiff alleged in the accessibility survey that there was

17   no ISA sign mounted on the right side of the entrance door (it was

18   on the left) and that the ISA symbol was not mounted at the

19   required height of 60 inches.[16]  However, by the time Joe Card

20   _____

21   [15]  This alleged barrier was identified as "4a & b" in the
     accessibility survey.  This alleged barrier was raised in both the

22   complaint and in plaintiff's cross-motion for summary judgment.

23   [16]  Section 4.30.6 of ADAAG specifies that, "where permanent
     identification is provided for rooms and spaces, signs shall be
     installed on the wall adjacent to the latch side of the door

24   . . . the mounting height "shall be 60 inches (1525 mm) above the
     finish floor to the centerline of the sign.  Mounting location for

25   such signage shall be so that a person may approach within 3 in (76
     mm) of signage without encountering protruding objects or standing

26   within the swing of a door."

1  surveyed the building, an ISA sign had been placed to the right

2  side of the door.  <u>See</u> Card Report at 1.  Even so, plaintiff

3  maintains in his cross-motion that the sign's height remains in

4  violation of the ADAAG standards.  Pl.'s Opp'n. at 2.  Defendant

5  moves for summary judgment on the grounds that as a matter of law,

6  there is no violation of ADAAG as the ADAAG does not discuss entry

7  door signs.

8      The ADAAG standards clearly requires that if there are ISA

9  signs, they must be posted 60 inches from the ground.  Here,

10  plaintiff's expert asserts that there is sign and it is posted 63

11  1/2 inches from the ground.  Since defendant produces no factual

12  evidence to dispute plaintiff's measurements, summary judgment is

13  GRANTED for plaintiff and DENIED as to defendant.

   **2.   <u>Improper or Missing Signs Designating Permanent Rooms and Spaces</u>**[17]

16      In the accessibility survey, plaintiff maintains that "signs

17  designating permanent rooms and spaces (men's and women's rooms;

18  room numbers; exit signs) must have raised and brailled letters;

19  and must comply with finish and contrast standards." Accessibility

20  Survey at 1.

21      It is undisputed that plaintiff is not visually impaired and

22  thus, he has not suffered an "injury in fact" due to the absence

23  of braille.  See <u>Access Now, Inc. v. South Florida Stadium Corp.</u>,

24  161 F.Supp.2d 1357, 1364 (S.D. Fla. 2001) ("To the extent that

---

26      [17]  Violation identified as 6a in the accessibility survey.

1   Plaintiffs complain about violations that would discriminate

2   against blind or deaf persons, or any disabilities other than that

3   suffered by Plaintiff Resnick, they lack standing to pursue such

4   claims."); <u>Martinez v. Longs Drug Stores, Inc.</u>, 2005 WL 2072013,

5   *2 (E.D. Cal. 2005).

6       Standing is limited to claims for which the plaintiff is

7   "among the injured." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555,

8   560-561 (1992).  Allowing plaintiff to sue on behalf of all the

9   disabled would extend beyond the limitations of Article III because

10  plaintiff cannot ultimately prove "injury in fact" as to a barrier

11  which does not affect him.  A plaintiff must have a "personal stake

12  in the outcome" sufficient to "assure that concrete adverseness

13  which sharpens the presentation of issues upon which the court so

14  largely depends for illumination of difficult . . . questions."

15  <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962).  Accordingly, the court

16  holds that this claim must be DISMISSED due to lack of standing.[18]

17      **3.   <u>Routes of Travel to Restroom and Emergency Exits are
        Blocked</u>**[19]

18

19      Plaintiff claims that there was a ladder obstructing the

20  emergency exit door and merchandise obstructed an accessible route

21  of travel to the restroom.  Defendant maintains that, "the ladder

22  and merchandise allegedly located in the store's circulation aisles

23  _____

24      [18]  The court also notes that plaintiff did not address this
    barrier in his opposition and cross-motion for summary judgment.

25

26      [19]  Violations identified as 6c & 7a in the accessibility
    survey.

1   constituted temporary obstructions that are not barriers as a

2   matter of law." Def.'s Mot. at 14.   Moreover, plaintiff's own

3   expert, Joe Card, testified that most of the alleged obstructions

4   in the store's aisles were temporary obstructions.

5        Neither the ADA nor the ADAAG addresses movable objects.  The

6   statute's implementing regulations explicitly require, however,

7   that "[p]ublic accommodations are required to maintain those

8   features of their facilities that need to be readily accessible to

9   people with disabilities." See 28 C.F.R. Pt. 36.211(a).  The

10  regulations also state that "[i]solated or temporary interruptions

11  in access due to maintenance or repairs are not prohibited."  See

12  28 C.F.R. Pt. 36.211(b).  The regulations appear to suggest that

13  although defendant is required to maintain ready accessibility, it

14  would not be liable for "isolated" or movable objects which

15  temporarily restrict access where the barrier is caused by

16  maintenance or repair.

17       The Justice Department has also determined that regular use

18  of an accessible route for storage of supplies would violate Title

19  III, but an isolated instance of placement of an object in an

20  accessible route is not a violation if the object is promptly

21  removed. See United States Department of Justice, Civil Rights

22  Division, The Americans with Disabilities Act: Title III Technical

23  Assistance Manual § III-3.7000 (1993); see also Bragdon v. Abbott,

24  524 U.S. 624, 646 (1998) (citing Technical Assistance Manual and

25  noting that Justice Department's views entitled to deference).

26  ////

1      Two cases which have addressed this issue, a Colorado Court

2  of Appeals case and an unpublished New Hampshire District Court

3  case, have both held that isolated failures to maintain access

4  routes or parking spaces, without more, are not covered by the ADA.

5  See Tanner v. Wal-Mart Stores, Inc., 2000 DNH 34 (D. N.H. 2000)

6  (isolated incident of failure to remove shopping carts does not

7  constitute a Title III violation); Pack v. Arkansas Valley

8  Correctional Facility, 849 P.2d 34, 38 (Colo. Ct. App. 1995)

9  (isolated instance of negligence regarding failure to remove ice

10  and snow from handicapped parking zone not an ADA violation).

11      Here, defendant asserts that any obstruction was only

12  temporary in nature.  Plaintiff fails to tender any evidence to the

13  contrary and fails to address this alleged barrier in either his

14  cross-motion for summary judgment or his reply brief.

15      For these reasons, defendant's motion for summary judgment as

16  to this barrier is GRANTED.

17      **4.   A Waste Receptacle is Located in an Area that is
           Required to be Clear Floor Space**[20]

18

19      Plaintiff claims that within the men's restroom, a waste

20  receptacle was placed in the required clear floor space and was a

21  barrier to people in wheelchairs attempting to reach the paper

22  towel dispenser.  See Accessibility Survey at 3.  This alleged

23  violation is also raised in plaintiff's cross motion for summary

24  judgment.   See Pl.'s Cross-Mot. at 3. Plaintiff's expert also

25  _____

26      [20]   Violation identified as 13a in the accessibility survey.

24

1  asserts in his report that a trash can is blocking the clear space

2  below the paper towel dispenser.  See Card Report at "Mens Page

3  # 07."

4      Defendant argues that the trash basket is a temporary obstacle

5  that can be moved and thus does not constitute a barrier.  Def.'s

6  Mot. at 18.  This argument is unavailing.  Plaintiff has put forth

7  factual allegations that the trash basket is an on-going barrier,

8  and defendant has failed to tender any evidence that the trash

9  basket is in fact a temporary object that does not violate the

10 ADAAG.  For this reason and with respect to this barrier,

11 defendant's motion is DENIED and plaintiff's motion is GRANTED.

12 **C.   ALLEGED BARRIERS RAISED IN PLAINTIFF'S CROSS-MOTION
        FOR SUMMARY JUDGMENT**

13

14     Plaintiff moves for summary judgment with respect to eleven

15 barriers which were identified in the August 2005 Card report.[21]

16 The court addresses each in turn.

17 ////

18 ////

19 ////

20 ////

21 ////

22 ////

23 _____

24     [21]   The court has already disposed of two of the eleven
   barriers as they were raised in the initial complaint.

25 Specifically, the court already addressed the alleged violation
   regarding the sign by the entrance door and the trash can in the

26 men's restroom.

1      **1.   Violations involving "dimensional tolerances"**

2      Three of the violations moved on by plaintiff involve very

3  small deviations in measurement.  Specifically, plaintiff alleges

4  the following violations:

5      (I) The lowered section of the service counter is 34-3/16

6  inches from the floor, citing ADAAG 4.32.4. [22]

7      (ii) The men's restroom mirror is mounted with the bottom edge

8  at 40 3/4 inches above the floor, citing to ADAAG § 4.19.6. [23]

9      (iii) In the men's restroom, the water closet is centered at

10  19 inches from the sidewall, citing to ADAAG 4.17.3. [24]

11      Defendant maintains that all three of these alleged violations

12  involve very small deviations from the measurements required by

13  ADAAG.  Defendant argues that the differences (3/16 of an inch with

14  respect to the service counter, 3/4 of an inch with respect to the

15  mirror and 1 inch with respect to the floor space) are within

16  dimensional tolerances, as provided for by ADAAG section 3.2.

17      Section 3.2 of ADAAG states that "[a]ll dimensions are subject

18  to conventional building industry tolerances for field conditions."

19  ////

20  ////

21  ─────────────────

22      [22]  Section 4.32.4 of ADAAG states that the "tops of
   accessible tables and counters shall be from 28 in to 34 in . . .
23  above the finish floor or ground."

24      [23]  Section 4.19.6 states that "[m]irrors shall be mounted
   with the bottom edge of the reflecting surface no higher than 40
25  in (1015 mm) above the finish floor."

26      [24]  Section 4.17.3 (Fig. 30(a)) states that "the centerline of
   the water closet shall be 18 inches (455 mm) from the side wall."

1   Although defendant attempts to catagorize these small differences

2   in measurements as being within "dimensional tolerance," defendant

3   has failed to provide evidence regarding applicable

4   conventional building industry tolerances.   See United States v.

5   AMC Entertainment, Inc., 245 F.Supp.2d 1094, 1100 (C.D. Cal. 2003).

6   "[M]any standards set forth in the ADAAG speak in terms of minimums

7   that must be provided," and defendant's argument suggests that the

8   court should "shave half an inch or an inch off these articulated

9   minimums." Id. See also Independent Living Resources v. Oregon

10  Arena Corp., 1 F.Supp.2d 1124, 1135 (D. Or. 1998) ("defendant has

11  not furnished this court with evidence of what those conventional

12  tolerances are for the particular construction work in question.").

13  Since defendant has failed to show that there is a remaining

14  dispute as to these barriers, plaintiff's motion for summary

15  judgment as to these three barriers is GRANTED.

16      **2.   The Entrance Door Requires 9 pounds of Pressure
            to Operate, which Violates CBC § 1133B.2.5 (1998 version)**
17

18      Plaintiff only cites to the California Building Code in

19  support of this alleged barrier.  Plaintiff fails to cite to any

20  section of ADAAG.  For the reasons discussed in section III C of

21  this order, the court need not address the CBC violations.  For

22  this reason, as to this barrier, defendant's motion is GRANTED.

23  ////

24  ////

25  ////

26  ////

1
    **3.   The Counter Lacks International Symbol of Accessibility Signage to Direct Disabled Customers to the Lowered Section of the Counter (the Lowered Section of the Counter is Not Visible from the Front of the Store), which Violates ADAAG § 4.30.7**

2

3

4        Plaintiff alleges that the counter lacks ISA signage to direct

5 disabled customers to the lowered section of the checkout counter

6 (citing ADAAG 4.30.7)  Defendant maintains that there is no

7 requirement for this type of signage.

8        Section 4.30.7 of the ADAAG states that "[f]acilities and

9 elements required to be identified as accessible by 4.1 shall use

10 the international symbol of accessibility." Section 4.1 states

11 that:

12

13        Elements and spaces of accessible facilities which shall be identified by the International Symbol of Accessibility and which shall comply with 4.30.7 are:

14

15        (a) Parking spaces designated as reserved for individuals with disabilities;

(b) Accessible passenger loading zones;

16        (c) Accessible entrances when not all are accessible (inaccessible entrances shall have directional signage to

17 indicate the route to the nearest accessible entrance);

(d) Accessible toilet and bathing facilities when not all

18 are accessible.

19 ADAAG, Sec. 4.2.1(7). Defendant maintains that read together,

20 these provisions establish that ISA signs are only required for

21 these specific locations. Def.'s Opp'n. at 15.  Plaintiff, on the

22 other hand, argues that this list is not exhaustive and "common

23 sense" dictates that there should be a sign placed over the

24 counter. <u>See</u> Pl.'s Reply at 13.  The court is bound by law, which,

25 for better or worse, does not always comport with common sense.

26 ////

1  The ADAAG standards do not mandate that a sign be placed over an

2  accessible checkout counter, and thus the court cannot expect

3  defendant to comply with a standard that does not exist.  For this

4  reason, plaintiff's motion for summary judgment as to this barrier

5  is DENIED.

6      **4.   The Store's Aisles Do Not Provide the Proper Width
            Clearance of 44 Inches**

7

8      Plaintiff asserts that the "the store's aisles do not provide

9  the proper width clearance of 44 inches, the aisles widths are 39

10  1/2, 38 1/2, 41, 42 1/2, 40 1/2, 41 1/2, 27 1/4, 36, 38 inches,

11  which violates ADAAG 4.3.3."  Pl. Opp'n. at 3.

12      Plaintiff misreads the ADAAG section.  Section 4.3.3 of ADAAG

13  specifically states that "the minimum clear width of an accessible

14  route shall be **36** in (915 mm) except at doors."  That said,

15  plaintiff asserts that one of the aisles measures only 27 1/4

16  inches, which does not comply with the ADAAG requirement.

17  Defendants fail to present any evidence that disputes this fact.

18  Given that at least one aisle is non-compliant with the ADAAG,

19  plaintiff's motion for summary judgment is GRANTED.

20      **5.   The Drinking Fountain Stream is only 2½ Inches High**

21      Plaintiff alleges that the drinking fountain stream is only

22  2 1/2 inches high, citing ADAAG section 4.15.3.   Section 4.15.3

23  provides that the "spout shall provide a flow of water at least 4

24  in (100 mm) high so as to allow the insertion of a cup or glass

25  under the flow of water."

26  ////

1   Defendant argues that plaintiff's expert made unreliable

2   measurement and that the expert did not clarify which fountain he

3   purportedly measured.  This argument is unavailing.

4   Plaintiff puts forth evidence in the form of expert testimony

5   that the water stream is lower than the ADAAG requirement.

6   Defendant fails to present any evidence that disputes this fact.

7   In short, defendant does not present any evidence which would

8   establish that a disputed fact remains with respect to the height

9   of the water stream.  For this reason, the court GRANTS plaintiff's

10  motion with respect to this barrier.

11          **6.   On the Men's Restroom Wall, the Pictogram is only 4
            Inches High**

12

13  Plaintiff alleges that the men's restroom wall signage has a

14  pictogram that is only 4 inches high, citing ADAAG 4.30.4.  Section

15  4.30.4 states that "the border dimension of the pictogram shall be

16  6 in (152 mm) minimum in height."  Defendant's expert, however,

17  measured the boarder at 8 inches.  Given that there is a factual

18  dispute, summary judgment is inapplicable and therefore,

19  plaintiff's motion as to this barrier is DENIED.

20          **7.   The Men's Restroom Door Requires 12 Pounds of Pressure
            to Operate**

21

22  Plaintiff alleges that the men's restroom door requires 12

23  pounds to operate, which violates ADAAG § 4.13.11.  Section 4.13.11

24  states that the maximum force for pushing or pulling open an

25  interior door is five pounds.  Defendant contends that plaintiff's

26  measurements are inaccurate and that defendant's expert measured

1  the restroom doors at "completely compliant pressures."  Def.'s

2  Opp'n. at 17.  It is clear that a genuine issue of material fact

3  remains and plaintiff's motion as to this barrier must therefore

4  be DENIED.

5                                **V.**

6                            **CONCLUSION**

7       The parties' cross-motions for summary judgment and/or summary

8  adjudication are GRANTED in part and DENIED in part as consistent

9  with this order.[25]

10       IT IS SO ORDERED.

11       DATED: June 16, 2006.

12                          _Lawrence K. Karlton_
                            LAWRENCE K. KARLTON
13                          SENIOR JUDGE
                            UNITED STATES DISTRICT COURT

14

15

16

17

18

19

20

21

22

23  ─────────────────
          [25]  Plaintiff requests from the court statutory damages in
24  the amount of $8,000.00 pursuant to the Unruh Act.   See Pl.'s
    Cross-Mot. and Opp'n at 7.  However, because there remain disputed
25  facts as to the ADA violations upon which plaintiff predicates his
    Unruh Act claims, it is inappropriate at this time to determine the
26  award of damages.

                                31