UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BYRON CHAPMAN,

        Plaintiff,

   v.

PIER 1 IMPORTS (U.S.), INC.,

        Defendant.
_____/

NO. CIV. S-04-1339 LKK/DAD

O R D E R

Plaintiff brings claims under the Americans with Disabilities Act and California law challenging the accessibility of defendant public accommodation. Currently before the court is defendants motion to dismiss. For the reasons discussed below, defendants motion is granted in part and denied in part.

## I. BACKGROUND

**A.  Plaintiff's Original (2004) Complaint**

On July 13, 2004, plaintiff Byron Chapman ("plaintiff" or "Chapman") filed his original complaint against defendant Pier 1 Imports (U.S.). Inc. ("defendant" or "Pier 1"). Plaintiff alleged

1

that he "requires the use of a motorized wheelchair and a vehicle with a lift system to transport his motorized wheelchair when traveling . . . in public" due to a spinal cord injury. Compl., Doc. No. 1, at ¶ 7. While plaintiff alleged that he encountered architectural barriers that denied him full and equal access when visiting the store, he did not identify any specific barriers that he encountered. Id. at ¶ 18. Rather, plaintiff only provided the following allegation: "Attached as Exhibit A is a true and accurate list, to the extent known by Chapman, (with photos) of the barriers that denied him access to the Store, *or* which he seeks to remove on behalf of others . . . ." Id. at ¶ 19 (emphasis added). The use of the word "or" in this sentence made it impossible to determine which barriers, if any, denied plaintiff access to the store as opposed to those that did not deny him access during his visits, but for which he nonetheless sought injunctive relief.

### B. Ninth Circuit Decision

On June 19, 2006, this court granted plaintiff's motion for summary judgment as to seven barriers listed in a report of the facilities and denied defendant's motion as to those barriers. Pier 1 appealed this decision arguing that plaintiff lacked standing as to these seven barriers because he had not personally encountered them and, consequently, they did not deter him from returning to the store. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 944 (9th Cir. 2011) (en banc). A three-judge panel of the Ninth Circuit reversed this court's grant of summary judgment and found plaintiff lacked standing as to the barriers he had not personally

2

encountered. Id.

Thereafter, plaintiff petitioned for and was granted a rehearing en banc. On January 7, 2011, the en banc panel issued an opinion holding that an ADA plaintiff has standing to sue for injunctive relief as to both encountered and unencountered barriers related to his disability when that plaintiff suffers an injury-in-fact by encountering a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability. Id. The panel confirmed the established rule that a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to [Pier 1]'s actions, and that the injury can be redressed by a favorable decision." Id. at 946 (internal citation omitted). The court further emphasized that, "to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, he must demonstrate a real and immediate threat of repeated injury in the future." Id. (internal quotation omitted). After recognizing that "the causation and redressability elements of standing are not at issue," the Circuit focused its inquiry on "whether Chapman has suffered an injury-in-fact and whether he has demonstrated a likelihood of future injury sufficient to support injunctive relief." Id.

In order to demonstrate an injury-in-fact, the Circuit explained, a disabled individual must encounter a barrier that interferes with his "full and equal enjoyment" of a facility. Id. at 947 (quoting 42 U.S.C. § 12182(a)). Standing is demonstrated where plaintiff alleges a violation of the ADA Accessibility

Guidelines for Buildings and Facilities ("ADAAG") that relates to his disability. Id. To demonstrate standing to pursue injunctive relief, a plaintiff must also demonstrate "a sufficient likelihood that he will again be wronged in a similar way." Id. at 948 (internal quotation omitted). In the context of a disability access claim, a plaintiff can show such standing by "[d]emonstrating an intent to return to a noncompliant accommodation . . . [or that] he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." Id. at 949. "If Chapman has standing to pursue injunctive relief as to some of the barriers that he actually encountered, then he has standing to seek an order requiring the removal of all barriers at [Pier 1] that are related to his disability and that he is likely to encounter on future visits." Id. at 951.

After confirming the standard for demonstrating standing for disability access cases, the en banc panel found that Chapman failed to allege the essential elements of Article III standing. Id. at 954. The Circuit explained that,

> Chapman leaves the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at Pier One. Nor does he identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return to the Store, or how any of them deter him from visiting the Store due to his disability. Although Chapman may establish standing as to unencountered barriers related to his disability, the list of barriers incorporated into his complaint does nothing more than perform a wholesale audit of the defendant's premises.

4

Id. at 955 (internal quotation omitted).

### C.    Plaintiff's First Amended (2011) Complaint

#### 1.    Allegations Concerning Encountered Barriers

The entire dispute as to whether plaintiff has alleged standing concerns the sentence structure of his allegations describing the barriers. For this reason, the court here quotes the relevant paragraph of Chapman's complaint:

> Chapman visited the store and encountered barriers (both physical and intangible) that interfered with - if not outright denied - his ability to use and enjoy the goods, services, privileges, and accommodations offered at the store. To the extent known by Chapman, these barriers currently include the following:
> - A customer service counter for disabled patrons that is between 28 and 34 inches above the floor, which has the requisite clear space (*i.e.*, not cluttered by merchandise) and which is open at all times. Because Chapman is in a wheelchair, he needs an accessible counter to make purchases at the store. Failing to provide such a counter interferes with his ability to avail himself of the store's goods and services.
> - Aisles that are not *a minimum* of 36-inches wide. Because Chapman is in a wheelchair, he needs paths of travel that is [sic] at least 36-inches wide so that his wheelchair does not run into merchandise, other patrons, or the sides of the aisles themselves. Failure to provide a clear floor space interferes with his ability to traverse the store.
>   . . .
> Chapman intends to return to Pier 1's store within a year (for a shopping excursion); and anticipates suffering, or has suffered (or both) *objective* discrimination because the store lacks an accessible counter and has aisles that are too narrow, which create a real and immediate threat of future injury.

First Amended Complaint ("FAC"), Doc. No. 159, ¶¶ 11, 13 (emphasis in original). The dispute concerns whether, from these allegations, the court can reasonably infer that Chapman actually encountered

5

the customer service counter and aisles. Specifically, the question is whether the use of the phrase, "To the extent known by Chapman," and the term, "currently," prevents the court from making the inference that Chapman encountered these identified barriers.

### 2. Allegations Concerning Discrimination through Contract

In the FAC, plaintiff also adds allegations that, "Pier 1 executed a contract stating that they would provide and maintain [certain] accessible elements. By failing to do so, Pier 1 has breached its contract with Chapman, and discriminated against him through the use of a contract." Id. at ¶ 12. Further, Chapman represents to the court in his complaint that, "[T]he parties agreed *via* a contract that Pier 1 would maintain the store in an accessible manner; in exchange, Chapman agreed to a stipulated judgment." Id. at ¶ 21 (emphasis in original). In a footnote to the sentence, plaintiff alleges that, "The precise terms of the contract are subject to a confidentiality provision and cannot be repeated here." Id. at ¶ 21 n.1.

### D. 2007 Joint Stipulation for Entry of Final Judgment

On June 19, 2007, after the court had issued the summary judgment order that Pier 1 appealed, the parties filed a joint stipulation for entry of final judgment. The parties stipulated that Pier 1 was to remove certain barriers within one hundred and twenty days and make a final modification within ninety days after Pier 1's appeal is exhausted. Joint Stip., Doc. No. 115, ¶¶ 12, 13. The court entered the stipulated final judgment on June 25, 2007.

1 Doc. No. 116. In this order, the court specifically retained
2 jurisdiction over the case for purposes of enforcing the final
3 judgment. Id.
4     Both plaintiff and defendant represented to the court in this
5 filing that,

> This Stipulation and the attached Final Judgment
> contain the entire agreement and understanding between
> the parties concerning the subject civil action, and
> supercedes and replaces all prior negotiations,
> proposed agreements and agreements, written or oral.
> Each of the parties acknowledges that no other party,
> nor any agent or attorney of such party, has made any
> promise, representation or warranty whatsoever,
> expressed or implied, which is not contained in this
> Stipulation or the attached Final Judgment, to induce
> him or it to execute this Stipulation or the attached
> Final Judgment. Each of the parties further
> acknowledges that he or it is not executing this
> Stipulation or the attached Final Judgment in reliance
> on any promise, representation or warranty not
> contained in this Stipulation or the attached Final
> Judgment.

15 Joint Stip. at ¶ 4. This representation to the court is in direct
16 conflict with plaintiff's representation to the court in his FAC
17 that he agreed to the stipulated judgment in exchange for other
18 confidential terms.[1]

### II. STANDARDS

**A.   Fed. R. Civ. P. 12(b)(1) Motion to Dismiss**

It is well established that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. KVOS, Inc. v. Associated Press, 299 U.S.

---

[1] The court does note that the joint stipulation references a separately entered settlement agreement as to several issues not addressed in the joint stipulation. Id. at ¶ 10.

7

269, 278 (1936); <u>Assoc. of Medical Colleges v. United States</u>, 217 F.3d 770, 778-779 (9th Cir. 2000). On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

Here, the challenge to jurisdiction is a facial attack. That is, the federal defendants contend that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. <u>See</u> <u>Sea Vessel Inc. v. Reyes</u>, 23 F.3d 345, 347 (11th Cir. 1994), <u>Osborn v. United States</u>, 918 F.2d 724, 729 n.6 (8th Cir. 1990); <u>see also</u> 2-12 Moore's Federal Practice - Civil § 12.30 (2009). The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. <u>Savage v. Glendale Union High Sch. Dist. No. 205</u>, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), <u>Miranda v. Reno</u>, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

**B.   Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give

8

defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged

9

under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ANALYSIS

**A.   Standing**

As discussed above, the Ninth Circuit set forth what plaintiff must allege to demonstrate standing. In short, to demonstrate that he suffered an injury-in-fact, plaintiff must allege that he encountered a barrier that interferes with his full and equal enjoyment of the public accommodation. A plaintiff has demonstrated such interference if the alleged barrier violates ADAAG standards that relate to his disability.

Defendant raises two arguments as to why plaintiff has not alleged sufficient facts to demonstrate standing. First, it contends that plaintiff did not allege that he actually encountered any barriers in its store. Second, Pier 1 argues that Chapman did not allege that any of the listed barriers actually interfered with his full and equal enjoyment of the store. The first dispute entirely derives from plaintiff's ambiguous choice of words. Instead of simply stating that he encountered the two identified barriers, plaintiff muddled his allegation with an unnecessary phrase and adjective. Specifically, instead of clearly stating, "These barriers are" or "Chapman encountered the following barriers," plaintiff alleged, "To the extent known by Chapman, these barriers currently include the following." In his opposition, plaintiff states that he can amend his complaint to remove this ambiguity.

1    On August 17, 2011, the Ninth Circuit issued a further opinion
2 explicating its previous en banc decision. Specifically, in <u>Oliver</u>
3 <u>v. Ralphs Grocery Company</u>, the Circuit determined that similar
4 language in a complaint filed by the same plaintiff's counsel in
5 this action failed to specify which, if any, barriers the plaintiff
6 had personally encountered. ___ F.3d ____, No. 09-56447, at 10890
7 (9th Cir. Aug. 17, 2011). In <u>Oliver</u>, however, plaintiff had alleged
8 that, "To the extent known by Oliver, the barriers at Food 4 Less
9 included, but are not limited to" certain barriers. <u>Id.</u> at 10886.
10 Here, Chapan has not used the open-ended "included, but not limited
11 to" language, but nonetheless, incorporated the identical ambiguous
12 phrase, "To the extent known by [plaintiff]". Without finding that
13 plaintiff's obscure allegations fail to meet pleading requirements
14 to demonstrate standing to sue, the court nonetheless instructs
15 plaintiff to file a second amended complaint in which he clearly
16 and simply alleges which barriers he has encountered. Doing so will
17 avoid any future confusion and allow this case to proceed.

18    Defendant also contends that plaintiff has not alleged facts
19 from which the court can plausibly infer that plaintiff has alleged
20 that the identified barriers actually interfered with his full use
21 and enjoyment of Pier 1. Assuming that plaintiff corrects the
22 syntactic errors discussed above, the court considers whether
23 plaintiff's descriptions of the barriers are sufficient. As
24 discussed in the previous section, the Ninth Circuit found that a
25 plaintiff can allege interference with the full use and enjoyment
26 of a public accommodation by showing that the barrier violates

11

ADAAG standards for full and equal enjoyment if the standard relates to plaintiff's disability. Plaintiff has alleged that the customer service counter is not between 28 and 34 inches above the floor and that the aisles are not a minimum of 36 inches wide. The ADAAG sets forth the following technical requirements:

> 4.32.4 Height of Tables or Counters: The tops of accessible tables and counters shall be from 28 in to 34 in (710 mm to 865 mm) above the finish floor or ground.
> 4.3.3 Width. The minimum clear width of an accessible route shall be 36 in (915 mm) except at doors.

Plaintiff has alleged that these requirements relate to his disability in that the required height and width allow him to access the counter space and maneuver his wheelchair. Thus, plaintiff has alleged facts sufficient for the court to plausibly infer that the identified barriers, assuming the introductory sentence is corrected to remove the ambiguity discussed above, interfered with his full and equal enjoyment of Pier 1.

### B. Discrimination Through Contract

Plaintiff also brings what appears to be a straightforward breach of contract claim, but attempts to do so as a violation of the ADA. He alleges that Pier 1 breached a contract with Chapman that it would provide and maintain certain accessible elements. FAC ¶¶ 12, 21. Instead of bringing a straightforward breach of contract claim, however, plaintiff argues that by breaching this contract Pier 1 has discriminated against him through the use of a contract.

The relevant section of the ADA provides that,

It shall be discriminatory to afford an individual or

12

1
2
3
4
      class of individuals, on the basis of a disability or disabilities of such individual or class, directly, *or through contractual, licensing, or other arrangements* with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

42 U.S.C. § 12182(b)(1)(A)(ii) (emphasis added). The plain meaning of this statute does not allow for plaintiff's theory of recovery. The language clearly prohibits a public accommodation from entering into a contract to avoid its responsibilities under the act, and does not provide any prohibition against breaching a contract to remove barriers. Such an interpretation also conforms with the legislative history of the section. H.R. Rep. No. 101-485(II) at 104, reprinted at 1990 U.S.C.C.A.N. 387 ("[T]he reference to contractual arrangements is to make clear that an entity may not do indirectly through contractual arrangements what it is prohibited from doing directly under this Act."). Thus, plaintiff's breach of contract claim is dismissed with prejudice insofar as it is brought as a violation of the ADA.

      **C.   Regular Breach of Contract Claim**

      While plaintiff has not stated a claim for discrimination through the use of a contract under the ADA, he has alleged facts to support a regular breach of contract claim. Under these circumstances, the court would ordinarily instruct plaintiff to file an amended complaint bringing a separate cause of action for breach of contract. However, here there are several unusual concerns that prevent such a conclusion.

      First, the court must consider the implications of the Ninth

13

Circuit's finding that, "Chapman lacked standing at the outset of this litigation to assert the ADA claims." If the court did not have jurisdiction over this matter when filed, then the final judgment order it entered approving the joint stipulation is also vacated. See Newdow v. Rio Linda Union Sch. Dist., 597 F.3d 1007, 1041 (9th Cir. 2010) (holding that no precedential effect should be given to the determination of an issue that should never have been decided). Specifically, if the Ninth Circuit did not find that this court lacked jurisdiction from the outset of the litigation over plaintiff's claims, plaintiff could simply move to enforce the stipulated judgment, jurisdiction over which was specifically reserved by court order. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994); Hagestad v. Tragesser, 49 F.3d 1430, 1433 (9th Cir. 1995). In this case, however, the Ninth Circuit implicitly found that this court lacked jurisdiction to enter the order approving the stipulated judgment and reserving jurisdiction over enforcement of it and, thus, the order retaining jurisdiction was implicitly vacated. Accordingly, the court must interpret the joint stipulation as a standard settlement agreement. The court also understands that the parties entered an additional private settlement, which is referenced in the joint stipulation. A breach of either agreement may constitute a breach of contract claim under state law.

Second, the question still remains as to whether plaintiff could bring such a state law claim in this court. "[P]endant jurisdiction may be exercised when federal and state claims have

a 'common nucleus of operative fact' and would 'ordinarily be expected to [be tried] all in one judicial proceeding." <u>Osborn v. Haley</u>, 549 U.S. 225, 245 (2007) (quoting <u>Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966); <u>see also</u> 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). While clearly related, the contract claims do not share a common nucleus of facts with the ADA claims. Specifically, they do not concern whether plaintiff encountered certain barriers that infringed upon his full and equal enjoyment of the accommodation. Rather, the contract claims, the court assumes, would consist of defendant's failure to perform certain obligations. For this reason, the court finds that it would be futile to allow plaintiff to file an amended complaint bringing a breach of contract claim. This, of course, does not preclude plaintiff from bringing a new action against defendant for breach of contract in state court or, if there is a basis for jurisdiction, in federal court.[2]

---

[2] The court must further note serious contradictions between the FAC and the record in this case. Specifically, plaintiff has alleged in the FAC that he entered a contract, whose terms are subject to a confidentiality provision, in which Chapman agreed to a stipulated judgment. The terms of the stipulation, which was filed in this case to persuade the court to enter judgment, however, explicitly state that it was not executed in reliance on any terms not contained in the stipulated judgment, which is not confidential. Under Fed. R. Civ. P. 11, an attorney making any representation to the court "certifies that to the best of the

15

### D. Supplemental Jurisdiction

Defendant lastly argues that this court should decline to exercise supplemental jurisdiction over plaintiff's state law claims premised upon the same factual allegations supporting his ADA claim because state law issues predominate.[3] Assuming that plaintiff will amend his complaint to clearly allege that he encountered the challenged barriers, the court now considers the merits of this argument. Under 28 U.S.C. § 1367, a court may decline to exercise supplemental jurisdiction over a related state claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there

---

person's knowledge, information, and belief, formed after an inquiry under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Here, it appears that either both parties made a knowingly false representation to the court when filing the joint stipulation or plaintiff made a knowingly false representation in his complaint. Nonetheless, the court declines to require further explanation from the parties because it is not granting plaintiff leave to add a breach of contract claim in this case. Thus, the court does not make any determination as to whether the representations made by the parties in this case are sanctionable under Rule 11.

[3] Defendant also argues that the court should decline to exercise supplemental jurisdiction over these claims if the court dismisses plaintiff's ADA claim. The court does not discuss this question because it is granting plaintiff leave to amend his ADA claim.

16

are other compelling reasons for declining jurisdiction." Pier 1 cites to a few district court orders finding that state law issues predominate in cases where ADA claims were brought with state law claims. It refers the court to no precedential authority requiring the court to follow their reasoning in the instant case.

Courts in this district, however, have routinely found that the exercise of supplemental jurisdiction is proper in cases very similar to the case at bar. See Johnson v. United Rental Northwest, Inc., No. 2:11-CV-00204-JAM-EFB, 2011 WL 2746110, at *4 (E.D. Cal. Jul. 13, 2011); Johnson v. Makinen, No. 2:09-CV-796 FCD KJM, 2009 WL 2137130, at *3 (E.D. Cal. Jul. 15, 2009); Johnson v. Barlow, No. CIV. S-06-01150 WBS GGH, 2007 WL 1723617, at *3 (E.D. Cal. June 9, 2007). These courts reasoned that declining to exercise supplemental jurisdiction in these cases "would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act [in an ADA case]." Barlow, 2007 WL 1723617, at *3. They emphasized that the burdens of proof and standards of liability are identical for both ADA and Unruh Act claims. Id. This court here adopts this reasoning and, therefore, exercises supplemental jurisdiction over plaintiff's state law claims.

### IV. CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

(1) Defendant's motion to dismiss (Doc. No. 164) is granted in part and denied in part.

(2) Defendant's motion to dismiss plaintiff's ADA claims for

17

1       lack of standing is granted.
2   (3) Defendant's motion to dismiss plaintiff's claim breach
3       of contract in violation of the ADA for failure to state
4       a claim is granted. This claim is dismissed with
5       prejudice.[4]
6   (4) Defendant's motion to dismiss plaintiff's state law
7       claims is denied.
8   (5) Plaintiff is granted leave of twenty-one (21) days to
9       file an amended complaint in which he may only amend
10      allegations in his complaint concerning whether he
11      encountered certain barriers and remove allegations
12      concerning the breach of contract claim.
13  IT IS SO ORDERED.
14  DATED: August 19, 2011.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[4] The court is in no way precluding plaintiff from bringing a claim for breach of contract under state law in a separate action.

18