1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11  BYRON CHAPMAN,
                                          NO. CIV. S-04-1339 LKK/DAD
12          Plaintiff,

13      v.
                                                O R D E R
14  PIER 1 IMPORTS (U.S.) INC.,

15          Defendant.
    _____/
16

17      **I.    INTRODUCTION**

18          Plaintiff's Second Amended Complaint asserts one claim under

19  Title III of the Americans with Disabilities Act of 1990 ("ADA"),

20  42 U.S.C. §§ 12181-89 ("Public Accommodations and Services Operated

21  by Private Entities"), against defendant Pier 1 Imports (U.S.),

22  Inc. ("Pier 1"),[1] along with several California state claims.

23  _____

24          [1] The complaint alleges: (1) that plaintiff was denied the
    "full and equal enjoyment" of defendant's facility, in violation
    of 42 U.S.C. § 12182(a); (2) that Pier 1's facility was not
25  designed to be "readily accessible to and usable" by the disabled,
    in violation of 42 U.S.C. § 12183(a)(1); (3) that Pier 1's facility
26  was altered in a manner that failed to make the facility

                                  1

1  Plaintiff seeks injunctive relief under the ADA and monetary relief

2  under the state claims.

3      The parties have cross-moved for summary judgment.  For the

4  reasons that follow, defendant's motion for summary judgment (and

5  other ancillary motions) will be denied, and plaintiff's cross-

6  motion for summary judgment will be granted.

7  **II.   BACKGROUND**

8      **A.   The Original Complaint.**

9      Plaintiff filed his original complaint on July 13, 2004,

10 asserting claims under the federal ADA, as well as California state

11 claims under the Unruh Act (Cal. Civ. Code § 51), and The Disabled

12 Persons Act (Cal. Civ. Code §§ 54 & 54.1).[2]  The complaint alleged

13 the existence of architectural barriers in the store that violated

14 his rights under the ADA.

15

16

17 accessible, in violation of 42 U.S.C. § 12183(a)(2); and (4) that
   Pier 1 failed to make "reasonable modifications" in their policies,
   practices or procedures needed to afford reasonable access to the
18 facility to the disabled, in violation of 42 U.S.C.
   § 12182(b)(2)(A)(ii).

19

20      [2] The state claims are entirely dependent on the federal
   claims.  The Second Amended Complaint does not allege any conduct
21 beyond that which is alleged to violate the ADA.  The Unruh Act
   provides that conduct violative of the ADA is also a violation of
22 state law.  Cal. Civ. Code § 51(f) ("A violation of the right of
   any individual under the federal Americans with Disabilities Act
23 of 1990 (P.L. 101-336) shall also constitute a violation of this
   section").  The Disabled Persons Act provides the same.  Cal. Civ.
24 Code § 54(c) ("A violation of the right of any individual under the
   federal Americans with Disabilities Act of 1990 (P.L. 101-336)
25 also constitutes a violation of this section"); 54.1(d) ("A
   violation of the right of an individual under the Americans with
26 Disabilities Act of 1990 (Public Law 101-336) also constitutes a
   violation of this section").

**B.   First Cross-Motions for Summary Judgment.**

The parties filed their first cross-motions for summary judgment in 2005.  This court determined, first, that Chapman's standing was not restricted to those barriers he had personally encountered.  <u>Chapman v. Pier 1 Imports</u>, 2006 WL 1686511 at *4-5 (E.D. Cal. 2006).  The court further held that Chapman was not limited to those barriers he had alleged in his complaint, and that defendant had fair notice of them by the time the summary judgment motions were filed.  <u>Id.</u>, at *4-5.  On the merits, this court partially granted and partially denied each party's motions.[3]

**C.   The Appeal.**

On appeal, the initial Ninth Circuit panel found that Chapman had standing as to those barriers he had actually encountered, but lacked standing as to any un-encountered barrier which did not

---

[3] The court dismissed the claim for improper or missing signs designating "permanent room and spaces," finding that Chapman lacked standing.  <u>Chapman</u>, 2006 WL 1686511 at *9.

The court granted summary judgment to defendant on the claims relating to: ten alleged barriers for which there was simply no evidence (<u>id.</u>, at *8); blocked routes to the restroom and emergency exit, as the evidence showed these were only temporary in nature (<u>id.</u>, at *9-10); and the force required to open the entrance door (<u>id.</u>, at 11).

The court granted summary judgment to Chapman on the claims involving: improper posting of "ISA signage" on the store's entrance doors ( <u>id.</u>, at *9); improper "dimensional tolerances" (<u>id.</u>, at *11); and the minimum 36" aisle width requirement (<u>id.</u>, at *12).

The court denied summary judgment on plaintiff's claims relating to: the placement of the International Symbol of Accessibility ("ISA") (<u>id.</u>, at *11); the Pictogram on the men's restroom wall (<u>id.</u>, at *12-13); and the pressure required to operate the men's restroom door (<u>id.</u>, at *13).

1 deter him from re-entering the store.  Chapman v. Pier 1 Imports

2 (U.S.) Inc., 571 F.3d 853 (9th Cir. 2009).

3     On en banc review, the Ninth Circuit agreed with this court

4 that Chapman had standing to sue for injunctive relief as to

5 barriers he had encountered, but also as to "other barriers related

6 to his disability, even if he is not deterred from returning to the

7 public accommodation at issue."  Chapman v. Pier 1 Imports (U.S.)

8 Inc., 631 F.3d 939, 944 (9th Cir. 2011) (en banc).  Thus, even in

9 the absence of actual deterrence, Chapman has standing if he

10 demonstrates "injury-in-fact coupled with an intent to return to

11 a noncompliant facility."  Id.  The Ninth Circuit also agreed

12 that after establishing standing as to encountered barriers,

13 Chapman "may also sue for injunctive relief as to unencountered

14 barriers related to his disability."  Id.

15     The Ninth Circuit vacated this court's decision and remanded

16 for dismissal however, because Chapman failed to establish that he

17 "personally suffered discrimination as defined by the ADA as to

18 encountered barriers on account of his disability."  Id.

19     **D.   The Remand.**

20     Although the Ninth Circuit instructed this court to dismiss

21 the complaint for lack of federal jurisdiction, plaintiff sought

22 leave to amend his complaint.  It was not clear if this was

23 permitted by the Ninth Circuit mandate, and so this court sought

24 clarification.  The Ninth Circuit ultimately clarified that the

25 court could grant leave to amend, in its discretion.  The court

26 granted leave to amend the complaint.

1      **E.   The Amended Complaint.**

2      Plaintiff filed a First Amended Complaint, and ultimately was

3  granted leave to amend that complaint.    The Second Amended

4  Complaint, the operative complaint here, specifically alleges that

5  Chapman visited the Pier 1 store at 2070 Harbison Drive in

6  Vacaville, California, and encountered barriers that interfered

7  with his ability to use and enjoy the facility.    Those barriers

8  are: (1) a customer service counter that was cluttered with

9  merchandise;[4] and (2) store aisles that are too narrow, that is,

10 less than 36 inches wide, because they too, are cluttered with

11 merchandise and other obstructions.    These allegations are

12 sufficient to establish Chapman's standing to sue under the Ninth

13 Circuit's mandate, since he now identifies which barriers he

14 actually encountered and how he was injured by them.    Defendant

15 does not argue lack of standing on these cross-motions.

16     Chapman also alleges that defendant is in violation of

17 California's Health & Safety Code, Part 5.5 (§§ 19955, <u>et seq</u>.),

18 and Govt. Code § 4450, which relate to California's standards for

19 making buildings accessible.

20     **F.   The Current Cross-Motions.**

21     Defendant moves for summary judgment on the ADA claims on

22 three grounds: (1) the accessible counter and the aisles were

23 completely clear on January 30, 2012, rendering plaintiff's claims

24 _____

25     [4] The complaint is less than crystal clear on this allegation.
   However, both parties seem to interpret it in the manner just
26 described.   It appears that plaintiff is not complaining that the
   accessibility counter was the wrong height.

moot; (2) any obstructions on the counter or in the aisles were "movable" or "were only temporary," and thus did not violate the ADA; and (3) Chapman has no "competent evidence" of any blockage of the accessibility counter. As for the claim under the California Health & Safety Code, defendant asserts that plaintiff "cannot establish any violation of state accessibility standards."

Chapman cross-moves for "summary judgment or partial summary judgment," although he does not specify which claim or claims he seeks judgment upon.[5] Since his brief addresses the ADA, the court infers that Chapman seeks summary judgment on the claims relating to the ADA claim, as well as the Unruh Act, and The Persons with Disabilities Act (as noted above, both state claims are established if the ADA claim is established).[6] Chapman asserts that the accessibility counter and the store's aisles were regularly blocked by merchandise. He further asserts that these blockages were not temporary, "but a systematic pattern of abuse against the disabled."

////

---

[5] Defendant moves to preclude plaintiff from moving for summary judgment, arguing that plaintiff missed the deadline for filing the cross-motion by one day. That motion will be denied. Defendant also moves to strike portions of plaintiff's declaration as "legal conclusions." The court can discern which assertions are factual and which are legal without striking portions of the declaration. That motion will also be denied.

[6] Chapman's brief says nothing about this fourth claim, relating to California's Health & Safety Code and the Gov't Code. It thus appears that Chapman does not seek summary judgment on that claim. To the degree Chapman does move for summary judgment on his fourth claim, it will be denied.

**II.   STANDARDS**

   **A.   Summary Judgment.**

   Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, ___, 129 S. Ct. 2658, 2677 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that they are 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

   Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law."  Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (en banc), cert. denied, 565 U.S. ___, 131 S. Ct. 1566 (2012) (same).

   Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be ... disputed."  Fed. R. Civ. P. 56(c)(1); Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of

a genuine issue of material fact"), citing Celotex v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Oracle Corp., 627 F.3d at 387 (where the moving party meets its burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial"). In doing so, the non-moving party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1)(A).

A wrinkle arises when the non-moving party will bear the burden of proof at trial. In that case, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387.

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls, 653 F.3d at 966. Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than

1   simply show that there is some metaphysical doubt as to the

2   material facts ....  Where the record taken as a whole could not

3   lead a rational trier of fact to find for the nonmoving party,

4   there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at

5   586-87 (citations omitted).

6        **B.   Title III (ADA) Discrimination Claim - Elements.**

7        To prevail on his Title III discrimination claim, Chapman must

8   show that (1) he is disabled within the meaning of the ADA; (2) the

9   defendant is a private entity that owns, leases, or operates a

10  place of public accommodation;[7] and (3) Chapman was denied public

11  accommodations (that is, full and equal treatment) by the defendant

12  because of his disability. <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d

13  724, 730 (9th Cir. 2007), <u>citing</u> 42 U.S.C. §§ 12182(a)-(b);

14  <u>Chapman</u> 2006 WL 1686511 at *7.

15                          **ANALYSIS**

16  **I.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

17       **A.   Tracey Snow Declaration.**

18       Defendant supports its summary judgment motion with, among

19  other things, the Declaration of Tracy Snow (Dkt. No. 185), the

20  store manager at the Vacaville store.  Plaintiff objects to the use

21  of this declaration because defendant never identified Snow as a

22  person with knowledge during discovery.  Although plaintiff does

23  not explain the problem, it would appear that plaintiff therefore

24  never had the opportunity to interview or depose Snow, and thus her

25  ─────────────

26       [7] The first two elements are undisputed in this case.  <u>See</u>
    <u>Chapman </u>2006 WL 1686511 at *7.

                              9

1  Declaration is an unfair surprise to them.

2      Plaintiff is correct.  Snow unsurprisingly is not identified
3  in defendant's October 11, 2004 "Initial Disclosures" pursuant to
4  Fed. R. Civ. P. 26(a)(1)(A), because Snow did not yet work there.
5  However, defendant did not identify anyone with knowledge in its
6  initial disclosures, and never supplemented the disclosures to add
7  Snow.  On February 21, 2005, defendant answered Interrogatories
8  that clearly asked for the names of persons with knowledge. See
9  Dkt. No. 28-13 at No. 6.  Defendant did not provide the name of
10 Snow or anyone else. On May 6, 2005, defendant supplemented its
11 interrogatory responses by stating that it was not aware of any
12 architectural barriers. See Dkt. No. 28-14 at No. 6. However, it
13 did not provide the name of any person with knowledge.  Defendant
14 apparently never supplemented its interrogatory responses to
15 identify Snow as a person with knowledge.

16     Defendant did, however, bury deep in its Interrogatory
17 responses, in response to an inquiry about affirmative defenses,
18 that an unidentified "Store Manager" knew about Pier 1's policies.
19 See Dkt. No. 28-13 at No. 12. Certainly, plaintiff should have
20 inquired further and found out that Snow is the store manager.  But
21 defendant did not give any indication that she was a percipient
22 witness about the cluttered or uncluttered state of the
23 accessibility counter, and whether the aisles were blocked with
24 merchandise and other materials.  However, much of her Declaration
25 is about those matters.  Defendant hid this witness – albeit in
26 plain view – by not naming her as a witness in response to any of

the interrogatories directed to the basics of plaintiff's affirmative case, where she is the obvious percipient witness, and by including her only in response to the request for information about affirmative defenses.

Rule 37(c)(1), Fed. R. Civ. P. provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial," unless excused.[8]  Defendant does not dispute that Snow was never previously identified, and in fact, does not address this issue at all.  It is unfair to consider the Snow Declaration on this motion, when plaintiff has had no reasonable opportunity to interview, depose, or otherwise conduct discovery of her.

Accordingly, plaintiff's motion to strike the Snow Declaration is **GRANTED**.

**B.   ADA Claims**

**1.   Obstructions - Counter and Aisles[9]**

_____

[8] The rule does not require a motion.  However, on motion, the court  may impose alternate sanctions.  Fed. R. Civ. P. 37(c)(1)(A)-(C).

[9] Defendant engages in separate discussions of (1) whether the accessible counter is obstructed and (2) whether the aisles are obstructed.  The court discusses them together.  It is true that the counter and the aisles have separate technical requirements. The accessible counter must be no taller than 36 inches in height, and the aisles must be no narrower than 36 inches in width. However, Chapman does not challenge whether the technical requirements are met as to the counter or the aisles.  He alleges that <u>both</u> are obstructed with merchandise, plants and other materials such that he is unable to use them.  The law governing obstructions does not distinguish between an obstructed counter and an obstructed aisle.  Neither will this court, except where it is

11

1    The Second Amended Complaint involves defendant's store at
2  2070 Harbison Drive in Vacaville, California.  <u>See</u> Plaintiff's
3  Response to Defendant's Statement of Undisputed Facts ("PRDUF") ¶
4  1 (Dkt. No. 186-2).  There are two sales counters at the store, and
5  of course, several aisles.  One of the counters is designed to be
6  used by Pier 1's wheelchair-bound customers (the "accessible sales
7  counter").   PRDUF  ¶  4;[10]  Defendant's  Response  to  Plaintiff's
8  Statment of Undisputed Facts ("DRPUF") ¶ 4.

9    In his complaint, Chapman alleges that he visited the store
10  and  encountered  an  accessible  counter  and  aisles  that  were
11  "cluttered by merchandise."  Complaint ¶¶ 11 & 20.  He alleges that
12  this clutter created barriers that prevented him from enjoying full
13  and equal access to the store's facilities, that defendant knew of
14  this state of affairs, that the barriers were not temporary and
15  that Pier 1 refuses to remove the barriers.[11]  <u>Id.</u> ¶¶ 11-15.

16  ////

17  ////

18  ////

19

20  necessary to do so.

21    [10] Defendant supports this fact by the Declaration of Tracey
    Snow which, as discussed below, is stricken.  However, Chapman
22  expressly adopts it as an undisputed fact.  PRDUF ¶ 4.

23    [11] The parties engage in some discussion of when the store was
    built in relation to when the Americans with Disabilities Act was
24  enacted.   Those discussions are immaterial because there is no
    (remaining) claim that any structural aspect of defendant's store
25  does not comply with the ADA.  The only claims are that clutter and
    other merchandise obstruct the accessibility counter and the
26  aisles.

###                                a.    Mootness

Defendant asserts that on January 30, 2012 the accessibility counter was "completely clear, other than when a customer or an employee places merchandise on the counter that a customer wishes to purchase," and that the aisles were "clear of goods," and navigable by wheelchair.  Defendant's Motion for Summary Judgment ("DSJ") (Dkt. No. 181) at p.5.[12]  Therefore, defendant argues, Chapman's entire case is "moot."  <u>Id.</u>  Defendant's argument is lacking on the facts and frivolous as a legal matter.

####                   (1)   The Mootness Argument Is Based Entirely Upon Snow's Stricken Declaration.

Defendant's assertion that the accessibility counter was "completely clear" on January 30th is predicated entirely on Paragraphs 5 and 24 of its Statement of Undisputed Facts, which, in turn, are predicated solely and entirely on the Snow Declaration.  Since the Snow Declaration has been excluded from use in this summary judgment, this assertion has no factual basis in the record, and will be disregarded.

####                   (2)   The Mootness Argument Fails as a Legal Matter.

For purposes of the legal analysis, the court will assume the accessibility counter was "completely clear" on the one single day defendant asserts it was, January 30, 2012.  Defendant argues that plaintiff may not obtain injunctive relief – the only relief

---

[12] Although defendant does not make it a part of its mootness argument, it also asserts that the aisles and counter were clear on October 28, 2011 and November 9, 2011, when its expert visited the store.  <u>See</u> Blackseth Declaration, Report (Dkt. No. 184-1).

1    available under Title III of the ADA – because the accessibility

2    counter was clear on this one, single day.  In support of this

3    remarkable position, defendant cites cases that unsurprisingly, do

4    not support it.

5        In Wander v. Kaus, 304 F.3d 856 (9th Cir. 2002), plaintiff

6    sued defendant property owners.  Soon after the lawsuit was filed,

7    defendants transferred ownership of the property to new owners,

8    "and no longer had any interest or involvement with the property

9    after that date."   Id., 304 F.3d at 858.  Because defendants

10   therefore could not possibly provide any relief, plaintiff conceded

11   that his claim for injunctive relief against them had become moot.

12   Id., 304 F.3d at 858.  The mooting of Wander does not justify

13   mooting this case based upon Pier 1's tidying up its accessibility

14   counter on a day of its choosing.[13]

15       In Dufresne v. Veneman, 114 F.3d 952 (9th Cir. 1997) (per

16   curiam), plaintiff sued California to put a stop to the spraying

17   of Malathion pesticide to eradicate the Mediterranean Fruitfly.

18   The case was rendered moot on appeal because the state ended the

19   spraying program entirely, having found that the fruitfly had been

20   completely eradicated.  The Ninth Circuit found that the cessation

21   of Malathion spraying was permanent, and that the possibility of

22   its resumption was "too remote to preserve a live case or

23   controversy."  Id., 114 F.3d at 955.  Defendant here, in contrast,

24

25       [13] The clear indication in Wander is that the transfer out of
     defendant's control was permanent, not done for one day, or for any
26   limited period of time.

1  makes no showing of any kind that the accessibility counter was

2  permanently clear.  Nor does defendant even assert that the counter

3  would not return to a cluttered state ever again.[14]

4      In <u>Eiden v. Home Depot USA, Inc.</u>, 2006 WL 1490418 (E.D. Cal.

5  2006) (Karlton, J.), this court dismissed as moot the claims

6  relating to those ADA barriers which had been remedied.  <u>Id.</u>, at

7  *9-10.  In that case, the remedial efforts were by their nature,

8  <u>permanent</u>: replaced signage, newly painted "No Parking" signs, new

9  handles on bathroom stall doors, and re-positioning of the toilet

10 paper dispenser.  <u>Id.</u>  In contrast, defendants' removal of clutter

11 from a counter is by its nature temporary.

12     In <u>Pickern v. Best Western Timber Cove Lodge Marina Resort</u>,

13 194 F. Supp.2d 1128 (E.D. Cal. 2002) (Shubb, J.), plaintiff

14 conceded "as she must, that defendants' latest remedial efforts

15 have rendered her ADA claim for injunctive relief moot." <u>Id.</u>, 194

16 F. Supp. at 1130.  Once again, as in the previously discussed cases

17 cited by defendant here, defendant in <u>Pickern</u> had made permanent,

18 structural changes to its facility that provided plaintiff with the

19 injunctive relief she sought.  That is what made the claims moot,

20 not the temporary removal of a barrier that could easily and

21 quickly return.

22     The legal principle that defendant invokes is "voluntary

23 compliance."  However, "a defendant claiming that its voluntary

24

25     [14] The court could eliminate much of its civil and criminal
    calendar if it adopted defendant's view that a lawsuit must be
    dismissed as moot if defendant can show that it did not violate the
26  law on a single day of its own choosing.

1  compliance moots a case bears the formidable burden of showing that

2  it is absolutely clear the allegedly wrongful behavior could not

3  reasonably be expected to recur."  Friends of the Earth, Inc. v.

4  Laidlaw Environmental Services (TOC), Inc.. 528 U.S. 167, 190

5  (2000).  Defendant has clearly not met such a burden here.  To the

6  contrary, defendant's argument demonstrates one aspect of the

7  recurrence problem that plaintiff himself complains about: that

8  customers place items on the accessible counter and leave them

9  there while shopping.[15]  DSJ at p.5.  It hardly demonstrates the

10 unlikelihood of recurrence to affirmatively assert that customers

11 use the accessibility counter as a storage location while they go

12 about their shopping, leaving the wheelchair bound customers either

13 to wait for them to finish shopping, clear the items away if they

14 can, or wait patiently until an employee or other customer comes

15 along who can clear the counter for them.

16     Defendant further asserts that "A request for prospective

17 injunctive relief can be mooted by a defendant's voluntary

18 cessation of challenged activity."  DSJ at p.5.  That is, at best,

19 an incomplete statement of what the law is, as made clear by

20 DeFunis v. Odegaard, 416 U.S. 312 (1974) (per curiam),[16] one of the

21

22     [15] Whether this conduct renders the counter in violation of
23 the ADA is another matter, which will be discussed below.

24     [16] Defendant also cites U.S. Parole Comm'n v. Geraghty, 445
   U.S. 388, 397 (1980) in support of its mootness argument, but
25 without any explanation.  The court does not see any connection
   between Geraghty and this case.  Geraghty addressed whether a class
26 action became moot upon the expiration of the claim of the named
   plaintiff.

1  cases defendant cites for his mootness argument:

2      There is a line of decisions in this Court standing for
       the proposition that the voluntary cessation of
3      allegedly illegal conduct does <u>not</u> deprive the tribunal
       of power to hear and determine the case, <u>i.e.</u>, does <u>not</u>
4      make the case moot.

5  <u>DeFunis</u>, 416 U.S. at 318 (citations and internal quotation marks

6  omitted) (emphasis added).  "Voluntary cessation" is relevant <u>only</u>

7  if:

8      it could be said with assurance that there is no
       reasonable expectation that the wrong will be repeated.
9      Otherwise, [the] defendant is free to return to his old
       ways, and this fact would be enough to prevent mootness
10     because of the public interest in having the legality of
       the practices settled.

11

12 <u>Id.</u> (citations and internal quotation marks omitted).[17]

13 Defendant's remaining mootness cases similarly do not support its

14 argument.[18]

15     Moreover, Chapman has made a sufficient showing that the

16 clutter is a recurring condition, and that it has not voluntarily

17 ceased.  Below is Chapman's recounting of his visits to the store,

18 ─────────────────

19     [17] In any event, "voluntary cessation" is not what occurred in
   <u>DeFunis</u>: "mootness in the present case depends not at all upon a
20 'voluntary cessation' of the admissions practices that were the
   subject of this litigation.  It depends, instead, upon the simple
21 fact that DeFunis is now in the final quarter of the final year of
   his course of study, and the settled and unchallenged policy of the
22 Law School is to permit him to complete the term for which he is
   now enrolled."  <u>DeFunis</u>, 416 U.S. at 318.

23     [18] <u>See</u> <u>San Lazaro Ass'n, Inc. v. Connell</u>, 286 F.3d 1088 (9th
   Cir.), <u>cert. denied</u>, 537 U.S. 878 (2002) (plaintiff's case against
24 California became moot when it voluntarily cancelled its license
   and thus rendered itself ineligible to receive the benefits sought
25 by the lawsuit); <u>H.C. ex rel. Gordon v. Koppel</u>, 203 F.3d 610 (9th
   Cir. 2000) (action seeking to disqualify a judge was rendered moot
26 when the judge "concluded her temporary assignment").

and the recurrent obstructions he encountered there:

1.   February 1, 2011 (Chapman Decl. ¶ 7; Chapman Depo. pp. 29-
     33):[19]
     aisles blocked as shown in Exhibit A.
     accessibility counter cluttered.

2.   February 7, 2011 (Chapman Decl. ¶ 8):
     aisles blocked as shown in Exh. A.

3.   February 14, 2011 (Chapman Decl. ¶ 9):
     aisles blocked as shown in Exh. A.
     accessibility counter cluttered as shown in Exh. A.

4.   March 6, 2011 (Chapman Decl. ¶ 10):
     aisles blocked as shown in Exh. A.

5.   April 29, 2011 (Chapman Decl. ¶¶ 11):
     aisles blocked as shown in Exh. A.

6.   May 2, 2011 (Chapman Decl. ¶ 12):
     aisles blocked as shown in Exh. A.

7.   June 30, 2011 (Chapman Decl. ¶ 13):
     aisles blocked as shown in Exh. A.

8.   October 29, 2011 (Chapman Decl. ¶ 14):
     aisles blocked as shown in Exh. A.

9.   November 23, 2011 (Chapman Decl. ¶ 18):
     aisles blocked as shown in Exh. A.

10.  January 9, 2012 (Chapman Decl. ¶ 19):
     aisles blocked as shown in Exh. A.

11.  February 9, 2012 (Champan Decl. ¶¶ 21-24):
     aisles blocked.
     accessibility counter cluttered as shown in Exh. B.


     Thus, even though the counters and aisles were eventually

cleared for Chapman, his subsequent visits to the store showed that

the aisles and occasionally the accessible counter were again

---

     [19] Also, PRDUF ¶ 11, 14.  Exhibit A (Dkt. No. 187), consists
of photographs of the obstructions that, according to Chapman's
Declaration, he took himself before leaving the store.  Chapman's
Deposition is Dkt. No. 202-4.

1    obstructed.  Chapman's evidence clearly shows that the obstructed

2    aisles  and  cluttered  accessibility  counter  are  a  recurrent

3    situation.  Defendant asserts that the encountered merchandise was

4    "temporary"  or  "movable,"  but  does  not  contest  that  Chapman

5    encountered them.

6         Chapman's lawsuit is not moot.

7              **b.   Temporary and movable nature of the clutter.**

8              **(1) Movable barriers - the law.**

9         Defendant  claims  as  a  legal  matter  that  "[t]he  DOJ's

10   commentary on its regulations, as well as its technical assistance

11   materials echo the point that the ADA does not apply to temporary

12   or movable obstructions."  Dkt. No. 181 at p.6 (ECF 13).  In fact,

13   nothing  in  the  DOJ's  (Attorney  General's)  commentaries  or  its

14   technical  assistance  materials  –  nor  in  the  ADA  itself,  its

15   implementing  regulations  or  the  ADA  Accessibility  Guidelines

16   ("ADAAG"), issued by the Architectural and Transportation Barriers

17   Compliance  Board  (the  "Access  Board")[20]  –  state  or  imply  that

18   _____

19        [20] The Access Board plays a critical role in implementing the
     Act:

20        Congress   mandated   that   the   Attorney   General's
          regulations  "be  consistent  with  the  minimum  guidelines
21        and  requirements  issued  by  the  Architectural  and
          Transportation  Barriers  Compliance  Board,"  42  U.S.C.  §
22        12186(c),  commonly  referred  to  as  the  "Access  Board."
          The  Access  Board  is  an  independent  federal  agency ....
23        29  U.S.C.  §  792(a)(1).   The  Board  is  directed  to
          establish  "minimum  guidelines  and  requirements  for  the
24        standards  issued"  under  Title  III  of  the  ADA,  29  U.S.C.
          §  792(b)(3)(B),  and  to  "develop  advisory  information
25        for,  and  provide  appropriate  technical  assistance  to,
          individuals  or  entities  with  rights  or  duties  under
26        regulations  prescribed"  under  Title  III,  29  U.S.C.  §

                                    19

1  "movable obstructions" cannot violate the ADA.   To the contrary,

2  the DOJ's commentary on its regulations states just the opposite.

3  In proposing the implementing regulations, the commentary states:

> Section 36.211 ... recognizes that it is not sufficient
> to provide features such as accessible routes ... if
> those features are not maintained in a manner that
> enables individuals with disabilities to use them. ...
> "[A]ccessible" routes that are obstructed by furniture,
> filing cabinets, or potted plants are neither
> "accessible to" nor "usable by" individuals with
> disabilities.

9  56 Fed. Reg. 7,452, 7,464 (February 22, 1991) (Notice of Proposed

10  Rule-making).[21]   From the very beginning, then, the Attorney

11  General recognized that it was not sufficient to have facilities

12  that are accessible in name only.   They must be _maintained_ in a

13  condition that allows a disabled person to actually use them.   In

14  promulgating the final implementing regulations, the Attorney

15  General again expressed those concerns:

> The requirement to remove architectural barriers
> includes the removal of physical barriers of any kind.
> For example, § 36.304 requires the removal, when readily
> achievable, of barriers caused by the location of
> temporary or movable structures, such as furniture,
> equipment, and display racks.

----

792(b)(2).   In sum, the Board establishes "minimum
guidelines" for Title III, but the DOJ promulgates its
own regulations, which must be consistent with-but not
necessarily identical to-the Board's guidelines.

_Miller v. California Speedway Corp._, 536 F.3d 1020, 1024-25 (9th
Cir. 2008), _cert. denied_, 555 U.S. 1208 (2009).

[21] The U.S. Attorney General is the principal regulator that
implements the Act.   _Miller_, 536 F.3d at 1024 ("The ADA directs the
Attorney General to 'issue regulations ... that include standards
applicable to facilities' covered by Title III").

56 Fed. Reg. 35,544, 35,568 (July 26, 1991) (Final Rule).

Defendant makes much of its assertion that plaintiff could have removed the obstructing merchandise on the accessible counter himself, but that he chose not to.   PRDUF ¶¶ 12-13 (Dkt. No. 186-2).   Plaintiff asserts that this is irrelevant, since it is defendant's obligation to make its store accessible, not the disabled plaintiff's.   Id.   Plaintiff is correct, as the DOJ's commentaries – and the ADA itself – refer to an obligation that defendant bears.[22]   It is not the responsibility of disabled, wheelchair-bound customers like Chapman to move furniture, equipment and display racks so that they can use defendant's facility, even if those things are "temporary and movable."

Even if defendant's assertion were relevant, defendant grossly mis-characterizes Chapman's testimony in this regard.   Defendant is correct that Chapman's own testimony shows that it was possible for a store employee to move the items, and that the items were not physically too heavy for Chapman to move.   But the testimony clearly explains, a few lines later in the transcript, that Chapman did not move them because he feared that doing so, from his wheelchair, could cause them to fall on the floor.   See Chapman Deposition (Dkt. 202-4) at p.32-33 ("As I recall, the counter was full.   If I were to put my items on the counter, those items had a great possibility of falling to the floor, ma'am").   If Pier 1

---

[22] The cited regulation states that "[a] public accommodation shall remove architectural barriers ... [including] rearranging ... furniture."   28 C.F.R. § 36.304(a) & (b)(4).   It does not state that disabled persons in wheelchairs shall remove those barriers.

1   means to argue that it is in compliance with the ADA by forcing

2   wheelchair-bound patrons to clear the accessibility counter

3   themselves, at the risk of having the cluttering material fall to

4   the floor – or on top of themselves – the court rejects the

5   argument.

6        Apart from claiming that the ADA requires disabled customers

7   to move barriers out of the way in order to shop at its store, Pier

8   1 claims that disabled customers can rely upon store clerks to

9   clear the accessibility counter.  Among the ADA's purposes however,

10  is to <u>eliminate</u> the stereotype of the helpless disabled person

11  completely reliant on the assistance of able-bodied persons to come

12  to their rescue, not to reinforce it.[23]  The disabled community

13  fought for, and earned, the right to have stores remove barriers

14  so that disabled customers could use those facilities

15  independently.  This court will not reduce Chapman to the need to

16  beg for assistance or to rely upon the hoped-for existence of a

17  kindly store clerk who happens to be in a mood to be helpful.

18  Defendant's obligation is to ensure that the accessibility counter

19  and the aisles are clear.  When it fails to do so, it is in

20  violation of the ADA.  It may not rely upon assertions that its

21  store clerks are kind and helpful and would eventually clear the

22  barriers that should not be there in the first place.

23  ////

24  _____

25       [23] <u>See, e.g.</u>, 42 U.S.C. § 12101(a)(5) ("individuals with
    disabilities continually encounter various forms of discrimination,
26  including ... overprotective rules and policies").

22

1                    **(2)  Temporary barriers - the law.**

2          Defendant also argues that the barriers were only "temporary."

3   It is true that the ADA does not create liability for "isolated or

4   temporary"  interruptions  in  the  availability  of  accessible

5   features. 28 C.F.R. § 36.211(b).  However, defendant's

6   interpretation of what barriers are "temporary" is not correct.

7   "Temporary" is not meant to exclude only objects like the Statue

8   of Liberty – deliberately placed there, immovable and intended to

9   stay there forever.

10         "Temporary,"  as  used  in  this  context,  is  closer  to

11  "transitory," that is, an object that is unavoidably placed in the

12  aisle, but with the intention of removing it as soon as possible.[24]

13  In 1993, pursuant to Title III's directive, the Attorney General

14  offered  further  guidance  and  clarification  on  temporary  and

15  "isolated"  obstructions  in  its  Technical  Assistance  Manual

16  ("TAM").[25]

17         Where a public accommodation must provide an accessible
           route, the route must remain accessible and not blocked
18         by obstacles such as furniture, filing cabinets, or
           potted plants....[¶] BUT:  An isolated instance of
19         placement of an object on an accessible route would not
           be a violation, if the object is promptly removed.
20  ////

21

22         [24]  "Temporary" can even refer to objects inadvertently
    blocking access on an isolated occasion, as this court discussed
23  in the previous cross-motions.  See Chapman, 2006 WL 1686511 at *9-
    10.
24
           [25]  "[P]ursuant to Title III's directive to provide technical
25  assistance to covered entities, the DOJ published a Technical
    Assistance Manual ('TAM')."  Miller, 536 F.3d at 1026, citing 42
26  U.S.C. § 12206(a), (c)(2)(c).

1  TAM III-3.7000 (www.ada.gov/taman3.html, last viewed by the court

2  on June 22, 2012).  The TAM thus recognizes that "isolated or

3  temporary interruptions in access" can be excused even if an object

4  is placed "on an accessible route."  But the action is excusable

5  only "if the object is promptly removed."  This belies defendant's

6  claim that the object can remain there indefinitely, so long as no

7  disabled person comes by and asks to have it removed.  Rather, the

8  route must remain accessible and not blocked.[26]  It demands that

9  the store maintain itself in such a way that the disabled customer

10 can use its facilities independently.

11      The "temporary" blockages that occur when a store is being re-

12 stocked or items are being moved from one office to another is not

13 prohibited by the ADA.  In 2008, the Attorney General clarified

14 this in his commentary to the proposed rules:

15      The Department has noticed that some covered entities do
        not understand what is required by § 36.211 ....  A
16      common problem observed by the Department is that
        covered facilities do not maintain accessible routes.
17      For example, the accessible routes in offices or stores
        are commonly obstructed by boxes, potted plants, display
18      racks, or other items so that the routes are
        inaccessible to people who use wheelchairs.  Under the
19      ADA, the accessible route must be maintained and,
        therefore, these items are required to be removed.  If
20      the items are placed there temporarily — for example, if
        an office receives multiple boxes of supplies and is
21      moving them from the hall to the storage room — then §
        36.211(b) excuses such "isolated or temporary

22

23      [26] Maintaining accessible routes would prevent exactly the
    humiliation that Chapman claims he experienced, according to his
24  Declaration, when the Vacaville store essentially assigned an
    employee to follow him around clearing obstructions out of his way.
25  See Chapman Declaration (Dkt. No. 187) ¶¶ 15-22.  As noted, the ADA
    is not meant to encourage stores to treat the disabled like
26  helpless children who must be hovered over at every moment.

1    interruptions."

2    73 Fed. Reg. 34,508, 34,523 (June 17, 2008) (Notice of Proposed

3    Rule-making).  The Attorney General reiterated this position again

4    in 2010 in explaining why it was declining to make a requested

5    change to Section 36.211 of the implementing regulations:

6        It is the Department's position that a temporary
         interruption that blocks an accessible route, such as
7        restocking of shelves, is already permitted by existing
         § 36.211(b), which clarifies that "isolated or temporary
8        interruptions in service or access due to maintenance or
         repairs" are permitted.
9

10   75 Fed. Reg. 56,236, 56,270 (September 15, 2010) (Commentary to

11   Final Rule).[27]

12        Thus the Attorney General has made very clear what is meant

13   by "temporary."  It is, as noted above, more akin to "transitory,"

14   in that it refers to, for example, boxes temporarily placed in an

15   accessible route <u>while being moved</u> from, say, "the hall to the

16   storage room."  Such barriers are "temporary," because they are

17   intended to be cleared as soon as the barrier is created.  They are

18   not intended to be placed there – and to stay there – until a

19   disabled customer finds that they are making it impossible to use

20   the facility.  In other words, the barrier is not "temporary" if

21   its placement requires a disabled person to interrupt his use of

22   the facility, wander around the facility trying to find a store

23   employee capable of moving the obstruction, and then request that

24   the barrier be removed.

25   ───────────────

26        [27] A commentator had requested that the Rule be amended to
     expressly permit restocking of shelves.

1                    **(3) Temporary barriers - the facts.**

2        Whether the barriers that Chapman encountered were "isolated

3   or temporary" is a question of fact.  Defendant's evidence here is

4   an expert report prepared by Kim R. Blackseth (Dkt No. 184).

5   Plaintiff does not challenge the expert nor the report.  Blackseth

6   states: "The aisles throughout the store were the required minimum

7   36 [inches] wide and clear of goods.[28]  On my site visits, I was

8   able to navigate the aisles in my electric Invacare wheelchair."

9   In addition, defendant cites Chapman's own deposition testimony for

10  the proposition that Chapman was able to navigate the aisles.

11       On this basis, it appears that defendant has met its burden

12  of production on summary judgment.  The question is whether Chapman

13  can establish a genuine issue as to this material fact.  He easily

14  does so.

15       First, Chapman relies on his own expert, Joe Card.  Card's

16  Declaration (Dkt. No. 189), states that he conducted an

17  "inspection" of the store on two separate occasions, May 13, 2005

18  and November 3, 2011.  On both occasions, Card encountered aisles

19  that were blocked by merchandise or reduced in width below 36

20  inches.  Photographs attached to the 2011 report show blocked

21  aisles, as well as a cluttered counter.  (Dkt. No. 183-2).  Also,

22  Chapman's deposition testimony is that "there were times that I

23  could not reach or get to certain items, height or not, due to the

24  ───────────────

25       [28] "The minimum clear width of an accessible route shall be 36
    [inches]."  ADAAG 4.3.3, 56 Fed. Reg. 45,584, 45,659 (September 6,
26  1991, Dept. of Transportation).

                                   26

1 aisles being blocked, ma'am" (at 52).

2     Second, Chapman's declaration, recounted above, provides
3 sufficient admissible evidence, including photographs of blocked
4 aisles and a cluttered accessibility counter, to create a triable
5 issue of fact on whether he encountered barriers in the store and
6 whether they were "isolated or temporary."  Accordingly, plaintiff
7 has met his burden to show that there is a genuine issue as to
8 whether the accessibility counter and aisles were obstructed, and
9 whether the obstruction was "isolated or temporary."

10     **C.   State Claims**

11         **1.   Disabled Persons Act and the Unruh Act**

12     Defendant seeks summary judgment on plaintiff's claims under
13 the California Disabled Persons Act and under the Unruh Act because
14 plaintiff "cannot establish any violation of applicable federal or
15 state accessibility standards."  As discussed above, there is a
16 genuine dispute about this, and accordingly defendant's motion for
17 summary judgment on these state claims will be denied.

18         **2.   Health & Safety Code.**

19     Defendant seeks summary judgment on plaintiff's claim under
20 the California Health & Safety Code and the Gov't Code because
21 plaintiff "cannot establish any violation of state accessibility
22 standards."  Defendant notes that plaintiff has made no defense of
23 this claim in his opposition and does not seek summary judgment on
24 the claim in his cross-motion, and argues that it is therefore
25 "abandoned."  Dkt. No. 193 at p.15 (ECF 19).  Defendant's cited
26 Ninth Circuit authority, Novato Fire Protection Dist. v. U.S., 181

1  F.3d 1135 (9th Cir. 1999) cert. denied, 529 U.S. 1129 (2000) does

2  not support this proposition.   It holds only that issues not

3  raised before the district court are waived on appeal.

4      On the merits, defendant failed to meet its initial burden on

5  summary judgment with respect to this claim, since it argues solely

6  that the obstructions plaintiff encountered were "temporary."   As

7  discussed above, defendant's argument is based upon its incorrect

8  view  of  what  obstructions  are  "temporary."   Accordingly,

9  defendant's motion for summary judgment is denied as to this claim,

10  notwithstanding plaintiff's unexplained silence.

11  **IV.   ANALYSIS - PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

12      Plaintiff cross-moves for summary judgment.   It is plaintiff's

13  initial burden to show that there are no material facts genuinely

14  in dispute, and that he is entitled to judgment as a matter of law.

15      Plaintiff's evidence, as discussed above, makes a sufficient

16  showing that on numerous occasions, he encountered barriers that

17  interfered with his ability to use and enjoy the facilities on an

18  equal footing with non-disabled customers.   He encountered aisles

19  that  were  blocked  with  merchandise,  and  he  encountered

20  accessibility counters that were cluttered with merchandise, as

21  follows:

22  1.   February 1, 2011 (Chapman Decl. ¶ 7; Chapman Depo. pp. 29-33)
       (Vacaville store):[29]
23       aisles blocked as shown in Exhibit A.

24  ─────────────

25      [29] Also, PRDUF ¶ 11, 14.  Exhibit A (Dkt. No. 187), consists
    of photographs of the obstructions that, according to Chapman's
    Declaration, he took himself before leaving the store.  Chapman's
26  Deposition is Dkt. No. 202-4.

accessibility counter cluttered.

2.   February 7, 2011 (Chapman Decl. ¶ 8) (Vacaville store):
     aisles blocked as shown in Exh. A.

3.   February 14, 2011 (Chapman Decl. ¶ 9) (Vacaville store):
     aisles blocked as shown in Exh. A.
     accessibility counter cluttered as shown in Exh. A.

4.   March 6, 2011 (Chapman Decl. ¶ 10) (Vacaville store):
     aisles blocked as shown in Exh. A.

5.   April 29, 2011 (Chapman Decl. ¶¶ 11) (Vacaville store):
     aisles blocked as shown in Exh. A.

6.   May 2, 2011 (Chapman Decl. ¶ 12): (Vacaville store):
     aisles blocked as shown in Exh. A.

7.   June 30, 2011 (Chapman Decl. ¶ 13) (Vacaville store):
     aisles blocked as shown in Exh. A.

8.   October 29, 2011 (Chapman Decl. ¶ 14) (Vacaville store):
     aisles blocked as shown in Exh. A.

9.   November 2, 2011 (Chapman Decl. ¶ 31):[30]
     aisles blocked as shown in Exh. B.

10.  November 3, 2011 (Chapman Decl. ¶ 32):[31]
     aisles blocked as shown in Exh. B.

11.  November 4, 2011 (Chapman Decl. ¶ 33):[32]
     aisles blocked as shown in Exh. B.

12.  November 4, 2011 (Chapman Decl. ¶ 34):[33]

---

[30] This paragraph refers to the Pier 1 store located at 6245 Sunrise Boulevard, Sacramento, California.  Plaintiff asserts that he offers evidence of other stores solely to impeach Pier 1's claim that the blockages he encountered at Vacaville were an isolated phenomenon.  Defendant has not objected to the evidence regarding these other stores.

[31] This paragraph refers to the Pier 1 store located at 1101 Galleria Boulevard, Roseville, California.

[32] This paragraph refers to the Pier 1 store located at 6245 Sunrise Boulevard, Sacramento, California.

[33] This paragraph refers to the Pier 1 store located at 3641 North Freeway Boulevard, Sacramento, California.

1          aisles blocked as shown in Exh. B.

2    13.   November 9, 2011 (Chapman Decl. ¶ 35):[34]
           aisles blocked as shown in Exh. B.
3
4    14.   November 9, 2011 (Chapman Decl. ¶ 36):[35]
           aisles blocked as shown in Exh. B.
5
6    15.   November 9, 2011 (Chapman Decl. ¶ 37):[36]
           aisles blocked as shown in Exh. B.

7    16.   November 22, 2011 (Chapman Decl. ¶ 38):[37]
           aisles blocked as shown in Exh. B.
8
9    17.   November 22, 2011 (Chapman Decl. ¶ 39):[38]
           aisles blocked as shown in Exh. B.

10   18.   November 22, 2011 (Chapman Decl. ¶ 40):[39]
           aisles blocked as shown in Exh. B.
11
     19.   November 23, 2011 (Chapman Decl. ¶ 18) (Vacaville Store):[40]
12         aisles blocked as shown in Exh. A.
           accessibility counter cluttered.
13
     20.   January 9, 2012 (Chapman Decl. ¶ 19) (Vacaville store):
14         aisles blocked as shown in Exh. A.

15   ////

16   _____

17        [34] This paragraph refers to the Pier 1 store located at 6245
18   Sunrise Boulevard, Sacramento, California.

          [35] This paragraph refers to the Pier 1 store located at 1101
19   Galleria Boulevard, Roseville, California.

20        [36]  This paragraph refers to the Pier 1 store located at 3641
21   North Freeway Boulevard, Sacramento, California.

          [37] This paragraph refers to the Pier 1 store located at 6245
22   Sunrise Boulevard, Sacramento, California.

23        [38] This paragraph refers to the Pier 1 store located at 1101
     Galleria Boulevard, Roseville, California.
24
          [39]  This paragraph refers to the Pier 1 store located at 3641
25   North Freeway Boulevard, Sacramento, California.

26        [40] Also, PRDUF ¶ 15, 17-19.

                             30

1   21.   January 27, 2012 (Chapman Decl. ¶ 41):[41]
          aisles blocked as shown in Exh. B.
2         accessibility counter cluttered with a large Easter Basket.

3   22.   February 9, 2012 (Champan Decl. ¶¶ 21-24) (Vacaville store):
          aisles blocked.
4         accessibility counter cluttered as shown in Exh. B.

5        Plaintiff has thus met his burden of establishing that Pier

6   1 failed to maintain its stores in a manner that complied with the

7   ADA and its implementing regulations.  Unless defendant can show

8   that there is a genuine issue of material fact here, plaintiff will

9   be entitled to a judgment on his ADA claims.  Defendant offers four

10  arguments to meet this burden, none of which raises a genuine issue

11  of material fact, or otherwise rebut plaintiff's factual or legal

12  showing.

13       **A.   ADA Claim.**

14            **1.   The Aisles and Counters Were Clear When Defendant's
                   Expert Visited.**

15

16       Defendant offers the Declaration and Expert report of Kim R.

17  Blackseth (Dkt. No. 184), as evidence that "the sales counter is

18  currently clear and has been clear in the past."

19       Blackseth's Declaration asserts that on his visits to Pier 1,

20  she "frequently" observed compliant aisles, and "frequently had no

21  problem navigating the aisles in my wheelchair."  Blackseth Decl.

22  ¶ 12.  On its own, this Declaration, by stating what "frequently"

23  happened, seems to be saying that on other - perhaps less frequent

24  - occasions, the aisles were blocked, and that navigation was not

25  ────────────

26       [41]  This paragraph refers to the Pier 1 store located at 3641
     North Freeway Boulevard, Sacramento, California.

1   a simple matter.  In any event, the Declaration does not create a

2   genuine dispute.

3        Blackseth's report (Dkt. No. 184-1), asserts that on October

4   28, 2011 and November 9, 2011, he visited the Vacaville store and

5   found that, on those days, the accessible counter was clear of

6   goods and the aisles were clear.  Id.  The report was supported by

7   photographs showing a clear accessibility counter, and three (3)

8   clear aisles.[42]  This report, however, does not contradict

9   plaintiff's sworn declaration and deposition testimony that this

10  same store had a cluttered accessibility counter and/or blocked

11  aisles on the days that he visited it – February 1, 7 and 14, 2011,

12  March 6, 2011, April 29, 2011, May 2, 2011, June 30, 2011, October

13  29, 2011, November 23, 2011, January 9, 2012 and February 9, 2012.

14  Neither the ADA nor its implementing regulations is concerned with

15  keeping a store accessible on the two days out of the year that it

16  is visited by its expert witness.  It is concerned with keeping the

17  facility accessible for the store's disabled customers, whenever

18  they might visit.

19       Defendant's first argument does not raise a genuine issue as

20  to any material fact, nor does it rebut plaintiff's entitlement to

21  summary judgment.

22            **2.   The Accessibility Counter Was Clear in 2004.**

23       Defendant, in its Reply, asserts that plaintiff did not

24

_____

25       [42] From the photographs themselves, it can be seen that the
    store has more than three aisles.  However, the report contains no
26  photographs of those other aisles.

complain of a cluttered accessibility counter in 2004, and that he improperly complains of it now.   It apparently refers to the following statement by plaintiff:

> Unlike barriers of concrete and steel, Pier 1's mootness defense is based <u>entirely</u> on their promise that the merchandise blocking the aisles and counter, which existed in 2004 and continue to exist in 2012 ... were removed and will not return in the future.   Yet, Chapman's photographs taken the day <u>before</u> this motion was filed ... clearly shows merchandise blocking the accessible routes.

Dkt. No. 186-1 at p.8 (emphasis in text).   Defendant apparently objects to plaintiffs insertion of the words "and counter" in the above quotation as it relates to 2004.   The court does not understand plaintiff to be making a retroactive argument about the accessibility counter, and if he is, the court will not credit it.

However, as to the claims that plaintiff is making – the aisles were blocked from 2004 forward, and the accessibility counter was cluttered during some of his 2011 and 2012 visits – defendant's argument does not create a genuine issue or otherwise rebut plaintiff's entitlement to summary judgment.

>    **3.   The Obstructions Were "Movable" and not "Permanent.**

Defendant argues that no violation of the ADA can occur if a disabled, wheelchair-bound customer can move the obstruction, or if a store employee happens by who can move it.   Dkt. No. 193 at p.8-9.   As discussed above, this is an incorrect interpretation of the law.   The legal obligation to maintain the store so that it is accessible to its customers rests with Pier 1, not the disabled, wheelchair-bound customers, and not to the off-chance that an

1   employee will happen by who is strong enough to move the

2   obstruction.[43]

3       Defendant's incorrect legal interpretation cannot defeat

4   plaintiff's entitlement to summary judgment.

5               **4.   The Cluttered Counters Were Usable.**

6       Defendant relies upon the photographs taken by plaintiff's

7   expert, Joe Card, to assert that plaintiff could use the cluttered

8   counter because there was enough free space available.  Even if

9   this were true, however, it does not contradict the other

10  photographs taken by plaintiff that show a cluttered accessibility

11  counter.  Nor does it dispute plaintiff's testimony that he could

12  not use the counter – which he encountered on a different day than

13  depicted in the Card Exhibits – until the clutter was moved.  In

14  short, plaintiff has provided evidence, including photographs

15  showing cluttered accessible counters, and defendant has not

16  responded to that evidence.[44]

17  _____

18      [43] Defendant relies heavily upon the stricken Snow Declaration
    for its assertion that the aisle blockages were movable.  Snow
19  repeats over and over again that the obstructions – which she does
    not deny were present – were "movable merchandise."  Even if the
20  Declaration were considered on this motion, it would not help
    defendant's case since, as discussed above, it is immaterial that
21  a wheelchair-bound customer could move the obstructions out of the
    way.
22

23      [44] Defendant also relies upon the Snow Declaration, which the
    court has excluded from consideration here.  However, even that
24  Declaration only addresses one single instance where plaintiff
    asserts that he could not use the accessible counter because of
25  clutter.  Even if the Declaration were considered on this motion,
    it would only put that single event in genuine dispute, but the
26  remaining evidence of unusable counters would be as uncontested as
    they are now.

1      Defendant cites <u>Kohler v. Flava Enterprises, Inc.</u>, 826 F.

2   Supp.2d 1221 (S.D. Cal. 2011), in support of its argument that the

3   counter was usable.   In <u>Kohler</u>, the plaintiff submitted a single

4   photograph that showed only "a few items on the counter, and it

5   does not appear that these items would prevent him from using the

6   lowered counter to purchase merchandise." <u>Id.</u>, 826 F. Supp.2d at

7   1228.  Those are not the facts before this court.  Here, plaintiff

8   has submitted declarations and deposition testimony – unrefuted by

9   defendant – that the clutter on the accessibility counter prevented

10  him from using the counter, and that he was able to use the counter

11  only after those items were moved.

12      Defendant has therefore failed to create a genuine dispute as

13  to the usability of the accessible counter.

14          **5.   The Clutter Was "Temporary."**

15      Defendant relies on its legal argument that the clutter – as

16  to the counter and the aisles – was "temporary" because a store

17  employee eventually moved the clutter so that plaintiff could

18  navigate the aisle or make his purchase.  As discussed above,

19  however, this is not "temporary" as that term applies to the ADA

20  and its implementing regulations.  As discussed above, temporary

21  does not mean that the obstructions are placed there, and stay

22  there, until a disabled person complains about them.  Temporary

23  means "in transit," in the sense that the obstacles are placed in

24  the aisle while being moved from one place to another.[45]

25  ──────────────

26      [45] The court does not rule that "in transit" or "transitory"
    is the only concept that can encompass the definition of

                                  35

1    Defendant relies heavily upon <u>Dodson v. Dollar Tree Stores,</u>

2    <u>Inc.</u>, 2006 WL 2084738 *3 (E.D. Cal. 2006) (England, J.), for the

3    proposition that merchandise in the aisles are "temporary" and do

4    not violate the ADA.[46]   However <u>Dodson</u> does not stand for this

5    proposition.   In <u>Dodson</u>, the court credited trial testimony that

6    "the only impediments" in the aisles "were related to ongoing

7    merchandise stocking."[47]   Accordingly, <u>Dodson</u> stands for the

8    proposition that this court has already set forth above, that

9    "temporary" obstructions are those that are "in transit," not those

10   that are sitting there waiting for a disabled person to encounter

11   them.

12   Defendant has failed to create a genuine issue on the

13   "temporary" status of the aisle blockages or the disability counter

14   clutter.

15   ////

16   _____

17   "temporary."  It is however, the one concept that appears
     consistently in the Attorney General's commentary.  The court

18   certainly would have considered other definitions if defendant had
     offered them.  However, the court rejects defendant's implicit
     definition – that obstacles that block the store aisle or prevent

19   use of the accessibility counter are "temporary" so long as they
     are moved <u>after</u> the disabled person encounters them.

20

21   [46] The remainder of defendant's cases along these lines are
     discussed above in the Mootness section.

22   [47] That <u>Dodson</u> testimony came from Kim Blackseth, defendant's

23   expert here.  However, in this case, Blackseth does not assert in
     his expert report, nor in his declaration, that the obstructions
     were related to ongoing merchandise stocking.  To the contrary, he

24   offers no explanation for the obstructions, because he did not
     observe any during his visits.  Even the Snow Declaration, which

25   the court is not considering in any event, did not ascribe the
     aisle blockages to merchandise stocking.  Rather, Snow focused on

26   her assertion that the obstructions were "movable."

**B.   STATE CLAIMS**

Plaintiff's claims under the Disabled Persons Act and the Unruh Act are established if a violation of the ADA is established. Accordingly, a summary judgment for plaintiff on his ADA claim requires a summary judgment on these state claims as well.

**V.   CONCLUSION**

Defendant, on its summary judgment motion, relied upon failed arguments that obstructions in its store did not violate the ADA because they were eventually moved after plaintiff encountered them, and because plaintiff himself could have moved them (notwithstanding the risks to his well-being and dignity).   It also relied upon failed factual assertions that its aisles and accessibility counter were not obstructed on dates when its expert witness visited, or the one day its store manager saw Chapman in the store.

On plaintiff's summary judgment motion, he established, without dispute, that on numerous occasions, Pier 1's aisles were blocked and that its accessibility counter was cluttered.   He established that he was prevented from using these facilities until the obstructions were eventually cleared away.

For the reasons set forth above:

1.   The Snow Declaration is **EXCLUDED** from consideration on this motion;

2.   Defendant's motion to preclude plaintiff's cross-motion as untimely, is **DENIED**;

////

1     3.    Defendant's motion to strike portions of the Chapman

2 Declaration is **DENIED**;

3     4.    Defendant's motion for summary judgment is **DENIED** in its

4 entirety;

5     5.    Plaintiff's cross-motion for summary judgment is **GRANTED**

6 as to the ADA claim, the Disabled Persons Act claim and the Unruh

7 Act claim.[48]

8     6.    Plaintiff shall submit a Proposed Judgment of Permanent

9 Injunction no later than fourteen (14) days from the date of this

10 order, and defendant shall file its response, if any, no later than

11 seven (7) days from plaintiff's filing.

12     7.    The Pretrial Conference date of September 4, 2012 at 1:30

13 p.m. is hereby **CONFIRMED**.   The court notes that the remaining

14 issues in the case are plaintiff's demand for damages under his

15 state claims, and the unresolved Health & Safety Code and Gov't

16 Code claim.

17     IT IS SO ORDERED.

18     DATED:  June 27, 2012.

19

20

21                                LAWRENCE K. KARLTON

                               SENIOR JUDGE

22                                UNITED STATES DISTRICT COURT

23

24 _____

25     [48]  As best the court can tell, plaintiff has not sought
summary judgment on his Health & Safety Code and Gov't Code claim.
To the degree plaintiff seeks summary judgment on this claim, it

26 is **DENIED**.